**BANK OF WAVERLY, a Banking Corporation, Plaintiff-Appellant,**

**v.**

**CITY BANK AND TRUST COMPANY, a Banking Corporation, Defendant-Respondent.**

**No. KCD 30578.**

Missouri Court of Appeals, Western District.

June 9, 1980.

Gary R. Bradley, Bradley & Langdon, Lexington, for plaintiff-appellant.

Rex V. Gump, Hulen, Hulen & Tatlow, Moberly, for defendant-respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment in the court below sustaining defendant's motion for summary judgment and entering judgment thereon. The case was decided upon the plaintiff's petition, documents made a part thereof, request for admissions and answers thereto, motions for summary judgment (filed by both parties), and affi-

davits in support thereof, and interrogatories and interrogatory answers. The court below based upon the record thus made ruled that the plaintiff's petition failed to state a claim upon which relief could be granted and that there was no genuine issue as to any material fact. No request was made to plead further or offer any additional documents or evidence, and the judgment was entered. The plaintiff Bank of Waverly (hereafter Waverly) timely appealed.

The facts upon which the court below ruled, which are undisputed, may be summarized as follows:

Sterling Hinton, an individual d/b/a Hinton Used Cars (Hinton) at Malta Bend, Missouri, entered into a "floor plan" security agreement and financing plan with Waverly on or about March 8, 1978, which secured "all used cars and trucks now owned or hereafter acquired" by Hinton. Although the Financing Statement form which was a documentary part of this arrangement had a box providing that proceeds of sales were to be secured, this box was not checked. An abbreviated version of this form was filed as a Financing Statement with the Saline County Recorder of Deeds on May 3, 1978.

During the existence of this security agreement, plaintiff Waverly financed a 1978 Ford pickup for Hinton for $5,270.00 on June 5, 1978.

On June 27, 1978, Hinton sold this pickup to Richard Head's Moberly Auto Auction (Head's) for the price of $5,230.00. Head's issued a draft for the $5,230.00 payable "To the order of Hinton Used Cars". This draft was drawn on defendant City Bank and Trust (City). On the face of the draft, directly above the drawer's signature, appear the following words in print:

"ALL PAYEES ARE ENDORSEMENT GUARANTORS THIS CHECK MUST BE DEPOSITED AND CLEARED THROUGH THE PAYEE'S BANK"

On the reverse side of the draft, in bold face type, the words "FOR DEPOSIT ONLY" are printed. These quoted phrases are printed on the draft form, are not hand-written, and were on the form before it was signed or executed by any of the persons above mentioned.

On June 29, 1978, the Vice President of Waverly, John Skidmore, placed a call to respondent City to advise them the draft may be presented for payment in an attempt to defraud Waverly. Mr. Skidmore was not allowed to speak to an officer, but communicated this message to a teller, whom he could not identify.

The same day, June 29, one G. L. Arnold presented this draft for payment to Wilma Linneman, a teller at respondent City. On the reverse side of the draft, Sterling Hinton had endorsed the draft by signature. Below his signature was the endorsing signature of G. L. Arnold. G. L. Arnold had an account at City, so, after the teller had obtained Vice President Jerry Jeffrey's identification of the man presenting the draft as G. L. Arnold, she cashed the draft, giving Mr. Arnold the proceeds. Arnold had stated to Wilma Linneman that his friend, Sterling Hinton, was having trouble cashing the draft because no one knew him. Appellant Waverly received none of the proceeds.

The plaintiff's petition alleged that the handling of this transaction by City was negligent and unlawful in violation of the "restrictive endorsement"; that City paid the proceeds of the draft to Sterling Hinton; and, that thereby it was damaged to the extent of its security interest in the vehicle in the amount of $5,230.00. While the petition is couched in terms of negligence, the real thrust of Waverly's cause of action is an attempt to enforce the payment of the draft to it as a holder or payee thereof, entitled to the proceeds.

Regarding appellant Waverly's theory of recovery under negotiable instrument law based on payment in violation of a restrictive endorsement, two observations stand out: *First*, that appellant's name or signature nowhere appears on the instrument in question; and *second*, that what appellant alleges to constitute a restrictive endorsement is printed matter on the draft form,

such being present on the form before the form became a viable instrument by execution.

■ Does appellant Waverly have standing to sue? The draft in question states the drawer or maker as Richard Head's Auto Auction, the drawee as respondent City (also the depositary bank, § 400.4–105(a) RSMo 1969), and the payee as Hinton Used Cars. Hinton Used Cars' endorsing signature of Sterling Hinton is on the top of the back side of the draft. Immediately under Hinton's signature is the signature of G. L. Arnold. No other signatures appear on the draft.

Missouri Code specifically states that no person is *liable* on an instrument unless his signature appears thereon. § 400.3–401(1) RSMo 1969. However, the Code does not as cogently state who is entitled to bring suit upon an instrument. The holder of an instrument has the right to enforce payment. § 400.3–301 RSMo 1969. Under § 400.3–603, the liability of any party to an instrument is discharged by payment or satisfaction to the holder even though made with knowledge of another person's claim to or collateral interest in the instrument, unless the claiming person provides indemnity to the party or obtains a court order enjoining payment. Subsection 2 of § 400.3–603 provides that:

> "Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (section 400.3–201)."

These statutory provisions, in keeping with negotiable instrument theory, at least imply that the holder of an instrument is the only non-party entitled to any rights in that instrument. The very purpose of making instruments negotiable is to enable a holder in due course to take an instrument evidencing a right to receive payment free from personal defenses of the parties to the instrument. It follows that a complete stranger to an instrument has no rights in that instrument.

Appellant's brief is unclear as to exactly what its basis is for recovery on the draft. On page 12 of the brief, in the last paragraph, appellant asserts that it enjoys "joint payee" status on the draft. Whether this is a recognition that payee status is necessary to bring suit, or whether appellant realizes that all of its cited authorities involve cases where a payee or maker is bringing suit, the fact remains that appellant is not and never has been a maker, payee, drawee, or holder of the draft in question.

The Uniform Commercial Code clearly distinguishes between parties, holders, and other persons or third parties. A holder is the one in possession of an instrument which was issued or endorsed to him. § 400.1–201(20). A "party", as distinguished from "third party", means a person who has engaged in a transaction or made an agreement within this chapter. § 400.1–201(29). Again, as to the draft in question, appellant did not engage in the transaction producing it, and was not a party to or holder of the draft.

Missouri cases substantiate the conclusion that a stranger cannot sue upon an instrument. In *Schneider v. Best Truck Lines, Inc.*, 472 S.W.2d 655 (Mo.App.1971), this Court held that where plaintiff payee had endorsed the note to a bank who in turn endorsed the note back to plaintiff, plaintiff was the legal owner of the note, and thus the proper party to maintain suit on it. Also, in *National Merchandising Corporation v. McAlpin*, 440 S.W.2d 489 (Mo.App. 1969), page 494, the court stated that where plaintiff's petition plus attached exhibits recited that plaintiff was the payee of a note and had endorsed the note, this indicated plaintiff was not the owner or holder of the note, and absent possession was not entitled to sue thereon.

These two Missouri cases, decided on notes created after the effective date of Missouri's Uniform Commercial Code (July 1, 1965), state the rule that a payee of an instrument can sue only if he has not negotiated it by endorsement, or if he has endorsed and negotiated, he must reacquire

possession to bring suit. If the payee of an instrument cannot maintain suit without legal title or possession of the instrument, a necessary corollary is that a stranger without possession cannot sue on the instrument.

12 Am.Jur.2d, Bills and Notes, § 1068, n. 8–9, pp. 94–95, states that ". . . a person having no interest in an instrument as *holder* or *owner* may not maintain an action thereon except with the assent of the owner." (Emphasis added). See also, Possession of bill or note as essential to maintain action thereon as holder, 102 A.L.R. 460, wherein is discussed the case of *Glens Falls Indemnity Co. v. Chase National Bank*, 257 N.Y. 441, 178 N.E. 751 (New York, 1931), which held that plaintiff could not maintain an action for conversion of a draft naming plaintiff as co-payee where plaintiff had delivered possession of the draft to his co-payee, and was not in possession at the time of the conversion.

■ Assuming, for purposes of examining appellant's other arguments, that appellant can maintain suit on the draft in question, its theory of recovery is that respondent wrongfully paid the draft in violation of a restrictive endorsement. Appellant contends that the words "FOR DEPOSIT ONLY", found in print on the draft form, constitute a restrictive endorsement for its protection.

A writing does not become a negotiable instrument until signed by the maker or drawer. § 400.3–104(1) RSMo 1969. Only a holder of an instrument can negotiate the instrument. § 400.3–202(1) and (2). Negotiation requires delivery with any necessary endorsement. § 400.3–202(1). An endorsement must be written on the instrument by or on behalf of the holder. § 400.3–202(2).

This draft was not an instrument until executed by the drawer, Head's, via the signature of Patsy Houtchens. The payee was Hinton Used Cars, who became the first holder. Upon his endorsement and negotiation to G. L. Arnold, he, Arnold, became the second holder. Upon his endorsement and transfer of possession, respondent City was the next holder and also the depositary bank.

The instrument directed it to pay from Head's funds the amount of the draft to the payee or order upon presentation for collection. Thus, there is no such restrictive endorsement on this draft on which Waverly can in any way claim protection or any other rights. This being so, there can be no valid cause of action as asserted by Waverly against City for payment of the draft to a holder in violation of such endorsement, and Waverly has no case under this theory.

Appellant's second theory, under Article Nine of the Commercial Code, is that appellant had a perfected security interest in the draft itself as proceeds from the sale of the secured truck. In oral argument before this Court, appellant admitted the financing statement was improperly filed (§ 400.9–306) and abandoned this point in open Court. Therefore, there was no perfected security interest in the collateral truck or proceeds from its sale.

The standard for granting the motion for summary judgment is whether "the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law" [Rule 74.04(h)] because "there is no genuine issue as to any material fact" [Rule 74.-04(c)].

City cannot be charged with negligent or unlawful conduct under circumstances, as here revealed, where it is presented with a valid draft drawn on it by a depositor with adequate funds for payment, presented for payment by *another known customer who is a holder by endorsement of the draft*. What other choice was open to City? Any liability which could arise as to City would be based upon its *refusal* to honor the draft under those circumstances. In ordinary commercial banking transactions involving drafts of this kind, they are deposited in an account for *collection*, not immediate credit. This is a usual protective procedure to permit the identification of signatures of drawer and the availability of adequate funds to warrant payment by the *drawer's* bank. Here, the drawer's bank was City, and obviously there was no question as to Head's

execution as drawer nor availability of funds to honor the draft. "Restrictive endorsements" are of no consequence under such circumstances.

This disposes of appellant's Points I and II, and the authorities cited thereunder. The authorities cited under these Points have been carefully studied and found not to be authoritative here.

Appellant's argument in Point III of its brief is directed to the standards for which a petition is dismissed for failure to state a claim upon which relief can be granted. The authority cited by appellant is likewise authority for such dismissal. The judgment of the trial court is an order sustaining defendant-respondent's motion for summary judgment. On page 22 of the transcript, the judgment is "that the petition fails to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact". Although this wording is somewhat ambivalent, the judgment appealed from is the order granting the motion for summary judgment.

After reading plaintiff-appellant's petition, requests for admissions, interrogatories, and defendant-respondent's answers to the interrogatories, answers to the requests for admissions, and the affidavits offered by each party, it is clear there is no genuine issue as to any material fact.

Respondent denied there being a restrictive endorsement as applicable to it, and also denied the draft being dated June 28, 1978. Respondent also refused to admit, having no knowledge thereof, any of the terms and dealings between appellant and Sterling Hinton. These dealings were not of consequence to an action based on the draft from Head's. As to the issues regarding the date of the draft and whether it was restrictively endorsed, the former is not material (the face of the draft shows its date as June 27, 1978), and the latter has been previously discussed.

There was no issue of any material fact, and on such facts appellant was not entitled to recover.

The motion for summary judgment was properly granted.

The judgment is affirmed.

All concur.