DEBORAH SHEIMAN ET AL. *v.* LAFAYETTE BANK AND
TRUST COMPANY ET AL.
(2553)

HULL, SPALLONE and DALY, Js.

Argued February 13—decision released May 14, 1985

*Edward T. Dodd, Jr.,* with whom, on the brief, was *Terence D. Mariani,* for the appellants (plaintiffs).

*Stephen R. Griffin,* for the appellee (defendant First Federal Savings and Loan Association of Waterbury).

SPALLONE, J. The plaintiffs, Deborah Sheiman and Elissa See, are the granddaughters of Estelle S. Dubow, who died intestate on November 16, 1980. The plaintiffs' mother, who was the daughter of Dubow, predeceased Dubow. On March 28, 1980, a check in the amount of $74,784.85 had been issued to Dubow on the account of Stuart M. Sheiman, Trustee Clients' Fund, at the defendant Lafayette Bank and Trust Company (Lafayette). On March 31, 1980, another daughter of Dubow, Rosalind Wilion, presented the unendorsed

check to the defendant First Federal Savings and Loan Association (First Federal), and First Federal collected the check from Lafayette.

With the proceeds of the check, Wilion purchased certificates of deposit from First Federal, payable to either herself or Dubow. Upon Dubow's death, title to the certificates passed to Wilion.[1] The record is silent as to the circumstances under which Wilion obtained the check from Dubow.

On October 18, 1982, the plaintiffs brought this action. In their complaint, they allege that as heirs-at-law of Dubow, they were each entitled to a one-sixth share of Dubow's estate; that a $74,784.85 check was issued to Dubow as payee; that the check was presented by Wilion to First Federal, without endorsement by Dubow; that First Federal issued certificates of deposit payable to Wilion or Dubow; that title to the certificates passed to Wilion upon Dubow's death; and that, as a result of the actions of both First Federal and Lafayette in negotiating the check, the plaintiffs' shares of Dubow's estate were significantly diminished. In their first count, the plaintiffs allege that their shares in Dubow's estate were diminished because the defendants failed to exercise ordinary care in handling the check; in their second count, they allege that they suffered financial losses and emotional distress because First Federal failed to act in good faith; in their third count, they allege that they suffered losses because both defendants acted negligently in processing the check; and in their fourth count, they allege that they incurred losses because both defendants acted recklessly and wantonly in processing the check.

Upon motion by First Federal, the plaintiffs revised their complaint to disclose that counts one and two were based on General Statutes § 42a-4-103 and that

[1] Dubow's estate was settled on September 15, 1982.

the alleged negligent, reckless and wanton acts in counts three and four stemmed, in essence, from the defendants' failure to determine whether Dubow indeed wished to have Wilion named as joint owner of the certificates of deposit.

First Federal thereafter moved to strike the complaint in its entirety on the ground that it failed to state a claim upon which relief could be granted. The trial court granted the motion to strike and rendered judgment in favor of First Federal, from which the plaintiffs now appeal.[2]

In reviewing the granting of a motion to strike, we view the facts to be those which are alleged in the complaint and construe them in a manner most favorable to the pleader. *Amodio* v. *Cunningham,* 182 Conn. 80, 82, 438 A.2d 6 (1980). All well pleaded facts are admitted and if facts which are provable under the allegations would support a cause of action or a defense, the motion to strike must fail. *Greene* v. *Metals Selling Corporation,* 3 Conn. App. 40, 41, 484 A.2d 478 (1984). Like its predecessor, the demurrer, a motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading at which the motion is directed. Id., 42; 1 Stephenson, Conn. Civ. Proc. § 116 (c).

A check, which is executed and delivered, is a contract under which the drawer contracts with the payee that the bank will pay the payee the amount designated upon presentation. *Bailey* v. *Polote,* 152 Ga. App. 255, 256, 262 S.E.2d 551 (1979). In actions on bills and notes, proper and necessary parties plaintiff are determined by the statutes and rules applicable generally to contracts, except as the provisions of the Uniform Com-

---

[2] Summary judgment was subsequently rendered in favor of Lafayette. The plaintiffs do not appeal from the judgment as to Lafayette, but only from the judgment rendered on First Federal's motion to strike.

mercial Code may govern in case of any conflict with such statutes or rules. 12 Am. Jur. 2d, Bills and Notes § 1068. "In all jurisdictions the holder of a negotiable instrument may maintain action thereon in his own name. He does not have to be the owner or the real party in interest. Conversely, a person having no interest in an instrument as holder or owner may not maintain an action thereon except with the assent of the owner." (Footnotes omitted.) Id.

A contract, whether it be express or implied, depends on an actual agreement. *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 94, 429 A.2d 808 (1980). The check which Wilion presented to First Federal, standing alone, reveals no contractual obligation running between First Federal and the plaintiffs. The plaintiffs, moreover, have not alleged that First Federal agreed, by words, action or conduct, to undertake any form of contractual commitment to them independent of the check. See id., 95.

Under General Statutes § 42a-4-103, "banks come under the general obligations of the use of good faith and the exercise of ordinary care" in the handling of negotiable instruments. U.C.C. comment 4, Conn. Gen. Stat. Ann. § 42a-4-103 (West 1960). General Statutes § 42a-4-103 (5) provides a rule for determining damages for the failure to exercise ordinary care. The damages rule of that subsection does not become operative, however, until the "liability of the bank and some loss to the *customer* or *owner* [has been] established." (Emphasis added.) U.C.C. comment 6, Conn. Gen. Stat. Ann. § 42a-4-103 (West 1960).

The plaintiffs have alleged no facts in counts one or two of their complaint which would admit to proof of the interest of either as an owner of the instrument

or as a customer of First Federal.[3] In our review, we may not look beyond the information which the complaint itself affords. *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 (1973). Because the plaintiffs have not alleged that any relationship contemplated by General Statutes § 42a-4-103 existed between themselves and First Federal, we conclude that the trial court was correct in finding that they had no rights in the instrument and no standing to sue thereon. See *Bank of Waverly* v. *City Bank & Trust Co.,* 600 S.W. 2d 630, 632 (Mo. App. 1980).

Counts three and four of the plaintiffs' complaint sound in tort. An action based on tort theory is separate and distinct from any claim based on the instrument. *Yahn & McDonnell* v. *Farmers Bank of State of Delaware,* 708 F.2d 104, 113 (3d Cir. 1983). Therefore, the plaintiffs' lack of standing to sue on the check does not dispose of their counts alleging negligence and reckless and wanton misconduct. "[T]he UCC does not displace the common law of tort as its affects parties in their commercial dealings except insofar as reliance on the common law would thwart the purposes of the Code." *New Jersey Bank, N. A.* v. *Bradford Securities Operations, Inc.,* 690 F.2d 339, 346 (3d Cir. 1982).

In order to recover in a tort case, the plaintiff must show that the defendant has breached a legal duty owed to him. Wright & FitzGerald, Connecticut Law of Torts (2d Ed.) § 2. "To sustain a cause of action [in negligence], the court must determine whether the defendant owed a duty to the [plaintiff]; *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 375, 441 A.2d 620 (1982); and the applicable standard of care. *Fidelity & Casualty Co.* v. *Constitution National Bank,* 167 Conn. 478, 482, 356 A.2d 117 (1975). The existence of a duty is

---

[3] "Customer" is defined in General Statutes § 42a-4-104 (1) (e) as "any person having an account with a bank or for whom a bank has agreed to collect items : . . . ."

a question of law. *Nolan* v. *The New York, New Haven & Hartford Railroad Co.*, 53 Conn. 461, 471, 4 A. 106 (1885) . . . . Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. See Green, 'The Duty Problem in Negligence Cases,' 28 Colum. L. Rev. 1014, 1029–30 (1928)." *Shore* v. *Stonington*, 187 Conn. 147, 151–52, 444 A.2d 1379 (1982).

The requisite duty to use care may stem from a contract, from a statute, or from circumstances under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result. *Coburn* v. *Lenox Homes, Inc.*, supra, 375. Negligence cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform. Here, the plaintiffs have failed to allege any contract, statute or circumstances which would give rise to a duty owed by First Federal which would support an action in negligence. See *McAnerney* v. *McAnerney*, supra, 284.

The plaintiffs' fourth count is couched in terms of wanton and reckless behavior. There is a wide difference between negligence and reckless or wanton misconduct. *Brock* v. *Waldron*, 127 Conn. 79, 81, 14 A.2d 713 (1940). " 'Recklessness is a state of consciousness with reference to the consequences of one's acts. *Commonwealth* v. *Pierce*, 138 Mass. 165, 175 [1884]. It "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man," and the actor "must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." Restatement, 2 Torts, § 500, comment g; *Rogers* v. *Doody*, 119 Conn. 532, 535, 178 Atl. 51 [1935]. It is "more than negligence, more

than gross negligence." *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 Atl. 136 [1929].' " *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 450–51, 254 A.2d 907 (1969).

The mere use of the words "reckless" and "wanton" is insufficient to raise an actionable claim of reckless and wanton misconduct. *Kostiuk* v. *Queally,* 159 Conn. 91, 94, 267 A.2d 452 (1970). To be legally sufficient, a count based on reckless and wanton misconduct must, like an action in negligence, allege some duty running from the defendant to the plaintiff.

In their fourth count, as in their third, the plaintiffs have failed to allege any facts from which such a duty may be proven. Their claims of negligent, wanton and reckless conduct are mere conclusions of law, and, in the absence of sufficient alleged facts to support them, are subject to a motion to strike. See *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 285, 449 A.2d 986 (1982).

There is no error.

In this opinion the other judges concurred.