985 F.2d 561
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re TENNESSEE PIPE FABRICATORS, INC.; Arnold A. Lively, Debtors.
BLAINE-HAYS CONSTRUCTION CO.; Merit Mechanical
Constructors, Inc.; USF & G Co., Plaintiffs,
v.
Arnold A. LIVELY; et al., Defendants,
George A. Harbour III, Defendant-Appellant,
Southeast Federal Savings Bank, Defendant-Appellee.
 No. 92-5507.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1993.
 
 Before MILBURN and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant George A. Harbour, III, appeals from the district court's grant of summary judgment in favor of defendant Southeast Federal Savings Bank ("Southeast Federal") on its cross-claim against Harbour. On appeal, the issues are (1) whether Harbour had standing to sue Southeast Federal for wrongful deposit of checks as to which Harbour was not the drawer, payee, endorser, or holder; (2) whether Southeast Federal owed any duty to Harbour to use ordinary care in depositing certain checks where Harbour was not the owner of the checks and was not a customer of the bank; and (3) whether Harbour was subrogated to the interests of any entity which may have had standing to sue Southeast Federal and to whom Southeast Federal might be liable for conversion of funds by misdepositing checks or for failure to use ordinary care in presenting checks for collection. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Harbour was the president of Merit Mechanical Constructors, Inc. ("Merit"), and the owner of twenty-five percent of its outstanding stock. Merit and Tennessee Pipe Fabricators, Inc., ("Tennessee Pipe") were engaged in a joint venture of fabrication and installation work at the Manville manufacturing plant in Etowah, Tennessee, and during the period of March through July 1986, Manville issued and sent to Tennessee Pipe six checks aggregating $130,420.92 and made payable jointly to Tennessee Pipe and Merit. In the usual course of business, Tennessee Pipe forwarded checks such as these to Merit's accounting office for deposit. These six checks, however, were deposited into Tennessee Pipe's account at Southeast Federal without a written endorsement by Merit.
 
 
 3
 In late 1986, Harbour learned that one of the checks had been deposited without Merit's endorsement in Tennessee Pipe's account. Harbour questioned Tennessee Pipe's president, Arnold Lively, about this check and was informed that it had been deposited by mistake. According to Harbour, Lively repeatedly lied to Harbour about the disposition of the Manville checks by leading him to believe that no payments were forthcoming from Manville. Sometime near March 1987, Harbour claims to have discovered that the six checks in question had been deposited to Tennessee Pipe's account at Southeast Federal without Merit's endorsement. Southeast Federal, however, disputes Harbour's account and contends that Harbour knew about the deposits from the beginning because he authorized Lively to make them without Merit's endorsement.
 
 
 4
 On April 3, 1987, Harbour borrowed $123,557 from First National Bank of Atlanta, taking the proceeds in the form of a check payable to himself. Also on April 3, 1987, Lively and Tennessee Pipe executed a promissory note payable to Harbour in the amount of $123,557, signed by Lively as president of Tennessee Pipe and individually as a co-signer. In addition, Tennessee Pipe pledged to Harbour a percentage of its accounts receivable, apparently as security for the note.
 
 
 5
 On April 5, 1987, Harbour and Lively met with Theodore Williams, an assistant vice president of Southeast Federal. Harbour endorsed his check and gave it to Williams, who caused the bank to issue a cashier's check to Merit in the same amount or $123,557. The check showed Tennessee Pipe as remittor. Lively delivered the cashier's check to Merit, which deposited the check in due course.
 
 B.
 
 6
 This case arose as an adversary proceeding in the bankruptcy of Tennessee Pipe and its president, Arnold Lively. The complaint, filed by Merit and others, alleged RICO fraud against Southeast Federal for the wrongful deposit of the six checks in question, and, in the alternative, alleged that Harbour had authorized the deposits. Southeast Federal cross-claimed against Harbour for declaratory relief, alleging that Harbour had authorized the deposits of the checks.
 
 
 7
 The district court withdrew its reference of the case to the bankruptcy court, pursuant to 28 U.S.C. § 157(d), and the case proceeded through discovery in district court. After discovery, all defendants moved for summary judgment against the plaintiffs, and Southeast Federal moved for summary judgment against Harbour. Although Harbour had cross-claimed against Southeast Federal, he filed no motion for summary judgment of his own.
 
 
 8
 The district court granted Southeast Federal's motion for summary judgment against Harbour, then dismissed with prejudice all other claims in the case for reasons unrelated to the controversy between Southeast Federal and Harbour. From the judgment subsequently entered in favor of Southeast Federal, Harbour timely filed this appeal.
 
 II.
 
 9
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R. of Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In our review, this court views all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). Where, as here, matters of state law are involved, this court reviews the district court's state law determinations de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221 (1991).
 
 
 10
 Harbour's first claim was made under Georgia Code Annotated § 11-3-116, which provides:
 
 
 11
 An instrument payable to the order of two or more persons:
 
 
 12
 (a) If in the alternative is payable to any one of them and may be negotiated, discharged, or enforced by any of them who has possession of it;
 
 
 13
 (b) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.
 
 
 14
 Under Georgia law, a bank that deposits a check without first obtaining all co-payees' endorsements is guilty of conversion and is liable to the payee whose endorsement was not obtained--in this case, Merit. Trust Co. of Columbus v. Refrigeration Supplies, Inc., 246 S.E.2d 282, 284 (Ga.1978). In Trust Company of Columbus, the Georgia Supreme Court also recognized "the rule that an action for conversion can be brought only by one who has title, possession, or a right to possession of the property." The payees on the checks in question were Merit and Tennessee Pipe. Personally, Harbour was not a payee on any of the checks, and he had no right to, or title in, them. Therefore, as the district court held, he had no standing to bring an action for their wrongful deposit and the attendant conversion of funds.
 
 
 15
 For similar reasons, Harbour had no right of action against the bank under Ga. Code Ann. § 11-4-202, which provides that a "collecting bank must use ordinary care ..." in presenting an item or sending it for presentment. As the district court held, Southeast Federal owed no duty to Harbour upon which liability under section 11-4-202 could be imposed.
 
 
 16
 Section 11-4-202 establishes ordinary tort liability for the bank's negligence in presenting a check for payment or in sending a check for presentment. Tort liability, however, is always predicated on the existence of a duty owed by the defendant to the plaintiff.
 
 
 17
 The requisite duty to use care may stem from a contract, from a statute, or from circumstances under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result. Negligence cannot be predicated upon failure to perform an act which the actor was under no duty or obligation to perform.
 
 
 18
 Sheiman v. Lafayette Bank and Trust Co., 492 A.2d 219, 222 (Conn.App.1985); accord Pennsylvania Nat. Turf Club, Inc. v. Bank of West Jersey, 385 A.2d 932, 936 (N.J.Super.Ct.App.Div.1978).
 
 
 19
 Harbour personally was a complete stranger to the checks in question in this case. He was not an owner, drawer, or payee of any of the checks, nor was he even a customer of Southeast Federal. Under these circumstances, as the district court found, Southeast Federal did not owe a duty of ordinary care to Harbour personally. Not surprisingly, Harbour cites no authority in which a complete stranger to a banking transaction such as this has been allowed to recover.
 
 
 20
 To overcome the obvious difficulties in his position resulting from his legal disconnection both from the six checks in question and from Southeast Federal, Harbour argues that he should be subrogated to the rights of Merit, which is connected to the six checks as a payee. The district court rejected this argument and found that "despite Harbour's contention that he made an 'advance' or 'interim replacement' of funds to Merit, the transaction was structured as a loan from Harbour to [Tennessee Pipe]." J.A. 617. We agree.
 
 
 21
 Georgia recognizes the operation of "legal subrogation," which takes place when one person pays the debt of another in order to protect his own interests.
 
 
 22
 The legal right of subrogation arising out of the payment of the debt of another extends only in favor of a surety for the payment of the debt or in favor of one who is compelled to pay the debt to protect his own right or interest....
 
 
 23
 Levinson v. American Thermex, Inc., 396 S.E.2d 252, 253 (Ga.App.1990) (quoting Hires v. Exum, 122 S.E. 784 (Ga.1924)). However,
 
 
 24
 [s]ubrogation will not be decreed in favor of a volunteer who, under no obligation to make the payment or not being compelled to do so to protect any right or property of his own, pays the debt of another without any assignment or agreement for subrogation.
 
 
 25
 Callan Court Co. v. Citizens & Southern Nat. Bank, 190 S.E. 831, 832 (Ga.1937). To bring himself within this principle, Harbour argues that his loan to Tennessee Pipe, because it was used in partial payment to Merit for the six checks misdeposited by Tennessee Pipe, should be viewed as the direct payment by Harbour of a debt owed to Merit by Southeast Federal.
 
 
 26
 Harbour's intention was not to pay off the bank's debt, if any, to Merit, because no such debt had been established or liquidated. Merit had made no demand on the bank, and the bank believed the deposits to have been authorized and proper. Rather, Harbour's chief intention seems to have been to protect the relationship between Merit and Tennessee Pipe so they could profitably complete their joint venture and maintain their relationship in the Manville project and several others.[1] Thus, if Harbour paid the debt of another, that other was Tennessee Pipe, which arguably had to account to Merit for $130,420.92 deposited in its Southeast Federal account, where it did not belong.
 
 
 27
 Moreover, as the district court found, the transaction in question was a loan by Harbour to Tennessee Pipe for the purpose of allowing the latter to repair its damaged relationship with Merit. In exchange for his check, Harbour received a note from Tennessee Pipe and Arnold Lively as well as a pledge of future profits. Thus, Harbour did not pay a debt owed to Merit by the bank: he volunteered a loan to another who used the proceeds to avoid a potential difficulty with a business associate. Under those circumstances there is no subrogation, any more than there is subrogation where a bank makes a debt consolidation loan to a borrower intending that the borrower shall use the loan proceeds to pay off his debts.
 
 
 28
 The only Georgia case cited by Harbour in support of his position is Lee v. Holman, 186 S.E. 189 (Ga.1936), a case in which the Supreme Court of Georgia held that, where a sister paid off a note made by her brothers under an agreement with them that she would be subrogated to the rights of the holder of the note, the agreement should be enforced. Lee is entirely distinguishable from the situation in this case because the sister in Lee paid off the liquidated debt directly to the holder of the debt, did not treat the matter as a loan to her brothers, and, instead of securing a note from them promising to repay her, she secured their agreement that she would be subrogated to the rights of the holder of the note she paid off. By contrast, the situation in this case has all the hallmarks of a loan and few of the trappings of a subrogation. The district court was therefore correct in holding that, as matters of Georgia law, Harbour had no standing to sue Southeast Federal and that Southeast Federal owed Harbour no duty in the circumstances.
 
 
 29
 In his reply brief, Harbour acknowledges that Southeast Federal would be liable for bad faith damages under Ga. Code Ann. § 11-4-103(5) only if it is otherwise liable to him under Ga. Code Ann. §§ 11-3-116 and 11-4-202(1)(a). Reply Brief of Appellant at 15-16. See also Sheiman, 492 A.2d at 221-22; Pennsylvania Nat. Turf Club, 385 A.2d at 935. Because Southeast Federal is not liable to Harbour under the Uniform Commercial Code provisions mentioned, it is not liable to him for bad faith damages under § 11-4-103(5).
 
 
 30
 The district court did not need to, and therefore did not, reach the question of whether Harbour's loan was a "voluntary payment" under Ga. Code Ann. § 13-1-13, which provides generally that voluntary payments of claims not made out of ignorance of the law or as the result of fraud cannot be recovered. Southeast Federal attempts to use the statute as an affirmative defense to Harbour's claim, but, as the district court noted, Harbour's claims failed well before any affirmative defense was necessary. The district court did not consider the applicability of Georgia's voluntary payment statute, and neither shall we.
 
 
 31
 Finally, Harbour argues that he is entitled to summary judgment on his cross-claim against Southeast Federal despite the fact that he did not move for summary judgment on it. Because the district court was correct in giving judgment to Southeast Federal against Harbour, it is not necessary for us to consider this assignment of error separately.
 
 III.
 
 32
 For the reasons stated, the summary judgment of the district court in favor of Southeast Federal is AFFIRMED.
 
 
 
 [1]
 See Brief of Appellant at 14. Also, in his deposition Harbour explained the transaction as follows:
 At the time we made the loan, basically what we gave was Tennessee-Lively some breathing room in order for them to complete their obligations to Merit Mechanical. Merit Mechanical received the money in order to operate on. And, as I told you before, at that particular time I wasn't really looking as far as to who would repay the money.
 R. 219, Deposition of George A. Harbour, III, at 361. J.A. p. 511.