[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
This case arises out of a dispute between the defendant, Connecticut National Bank, and its business checking account customer, the plaintiff, Leaksealers, Inc. On November 4, 1994, the plaintiff filed a twelve count amended complaint, alleging the following.
The plaintiff maintained a checking account with the defendant and, from time to time, caused substantial sums of money to be deposited in its account. From October 20, 1989, and continuing until August 23, 1991, numerous checks drawn and issued by the plaintiff, and drawn against the plaintiff's checking account with the defendant, made payable to the order of the plaintiff's employees, vendors, and other persons and/or companies, were endorsed and presented to the defendant for payment by a person who was neither authorized to endorse or present these checks. At various times that the checks were presented for payment, the defendant accepted and cashed the checks, and paid the amount indicated on the checks to the person who presented the checks. Although the persons were neither the named payees on the checks nor authorized to present or cash the checks, the defendant charged the plaintiff's checking account for the amount of the checks so cashed.
Upon discovery, the plaintiff promptly notified the defendant of the unauthorized endorsements, presentments, and payments of the checks. The plaintiff demanded that the defendant restore and credit the plaintiff's checking account for the amount of the checks that had been wrongly and CT Page 6105 improperly cashed and charged to its account. The defendant refused to restore and/or credit the plaintiff's checking account for the amounts which the defendant had charged to the plaintiff's checking account.
The plaintiff's amended complaint is divided into two groups of checks. The series of checks in the first six counts were properly issued by the plaintiff but contained unauthorized endorsements. The second category of checks, identified in counts seven through twelve, were not issued by the plaintiff and bore unauthorized drawer's signatures. The allegations in counts seven through twelve are virtually identical to those found in counts one through six of the amended complaint, except for the above noted distinction.
In counts one and seven, the plaintiff alleges that the defendant is liable to the plaintiff under General Statutes § 42a-3-419 for converting the funds which were wrongly withdrawn from the plaintiff's account, and charged to the plaintiff's account, by reason of the unauthorized acts of the person drawing, endorsing, presenting, and cashing the checks.
In counts two and eight, the plaintiff alleges that the defendant, in cashing checks drawn without authority on the plaintiff's checking account and endorsed, presented, and cashed by a person who was not authorized by the named payee to do so, the defendant charged the plaintiff's checking account checks which were not properly payable, in violation of General Statutes § 42a-4-401. Counts three and nine contain separate, but identical, allegations of negligence under both the Uniform Commercial Code ("UCC") and under the common law. Additionally, counts four and ten contain separate, but identical, allegations of recklessness under both the UCC and under common law.
In counts five and eleven, the plaintiff alleges that the defendant's conduct constitutes a breach of its express and/or implied banking contract with the plaintiff. Finally, in counts six and twelve, the plaintiff alleges that the defendant's conduct constitutes unfair and/or deceptive acts and practices in the conduct of a trade or commerce, in violation of General Statutes § 42-110(b)(a), the Connecticut Unfair Trade Practices Act ("CUTPA).
On January 3, 1995, the defendant filed a motion to CT Page 6106 strike counts one, three, four, six, seven, nine, ten and twelve of the plaintiff's amended complaint on the following grounds: 1) counts one and seven fail to state a cause of action upon which relief can be granted because a common law action for conversion is displaced by General Statutes § 42a-3-419
and the plaintiff has failed to allege sufficient facts to establish a cause of action under § 42a-3-419; 2) counts three and nine fail to state a cause of action upon which relief can be granted because a cause of action for common law negligence is prohibited under the fraud allocation rules of the UCC; 3) counts four and ten fail to state a cause of action upon which relief can be granted because the plaintiff fails to allege any conduct which, if proven, would amount to "willful, wanton and reckless misconduct;" and 4) counts six and twelve fail to state a cause of action upon which relief can be granted because the plaintiff fails to allege any kind of consumer relationship between it and the defendant, as required by CUTPA.
The defendant filed a memorandum of law in support of its motion to strike, and the plaintiff timely filed a memorandum in opposition. Additionally, on January 30, 1995, the defendant filed a memorandum in reply to the plaintiff's objection to the motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Gordonv. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988). "The motion to strike . . . admits all facts well pleaded." Ferryman v. Groton, 212 Conn. 136, 142,561 A.2d 432 (1989). "The court must construe the facts in the complaint most favorably to the plaintiff." Gordon v.Bridgeport Housing Authority, supra, 208 Conn. 170.
Counts One and Seven — Conversion
In its memorandum of law in support of its motion to strike, the defendant argues that the present case clearly comes within the purview of Articles 1, 3, and 4 of the Uniform Commercial Code ("UCC"). The defendant argues that because the UCC governs the present case, any common law action for conversion cannot stand. The defendant further argues that because § 3-419 of the UCC applies only to the conversion of negotiable instruments, and because the common CT Page 6107 law does not permit an action for the conversion of a bank account, counts one and seven fail to state causes of action upon which relief may be granted.
In response, the plaintiff argues that counts one and seven of the amended complaint sufficiently state a cause of action insofar as they allege common law and statutory conversion of checks. The plaintiff argues that General Statutes § 42a-3-419 does not displace actions founded upon common law conversion. The plaintiff further argues that it has sufficiently alleged a cause of action under General Statutes § 42a-3-419 and under common law conversion. As such, the plaintiff argues that the defendant's motion to strike as to counts one and seven should be denied.
To date, the Connecticut Supreme Court has not determined whether General Statutes § 42a-3-419 preempts any common law claims for conversion. On the other hand, at least three Superior Court decisions have indicated that General Statutes § 42a-3-419 does not displace actions founded upon common law conversion. See, eg., DiChello v. City Trust Bank Corp.,
Superior Court, judicial district of New Haven, Docket No. 270965 (February 22, 1991, Healey, STR.) (court acknowledged that plaintiff may bring a cause of action for conversion under the UCC or under common law); Healthcare, Inc. v. DimeSavings Bank of Wallingford, 4 Conn. L. Rptr. 15 (May 3, 1991, Mihalakos, J.) (since General Statutes § 42a-3-419 does not expressly provide that it preempts any common law cause of action, court denied defendant's motion to strike plaintiff's common law negligence claim); and Equipment Distributors, Inc.v. Charter Oak Bank Trust Co., 34 Conn. Sup. 606,379 A.2d 682 (1977) (payment of a check which contains a forged endorsement may constitute conversion under General Statutes § 42a-3-419, and payment of an unauthorized check may also constitute common law conversion).
Against this background, the court denies the defendant's motion to strike as to counts one and seven of the amended complaint. As pointed out by the court in Healthcare, Inc. v.Dime Savings Bank of Wallingford, supra, 4 Conn. L. Rptr. 16:
 In construing a statute, the intent of the legislature is to be found not in what it meant to say, but in what it did say . . . . Section 42-3-419 does not state that it precludes common law CT Page 6108 claims based on factual situations within it. On the other hand, there are other Connecticut statutes which specifically preclude other claims. See Connecticut General Statutes Section 52-272n (sic) which specifically states . . . A product liability claim . . . shall be in lieu of all other claims against product sellers.
(Citations omitted; internal quotation marks omitted.) Id. Having determined that General Statutes § 42a-3-419 does not preclude a common law cause of action for conversion, this court must now determine whether the allegations in counts one and seven give rise to causes of action for conversion.
General Statutes § 42a-3-420, the successor provisions to General Statutes § 42a-3-419 regarding conversion of instruments, states, in pertinent part, that:
 (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
Id. For purposes of the UCC, the payment of a check on a forged endorsement constitutes a cause of action for conversion. See Hartford Accident and Indemnity Co. v.Connecticut Bank and Trust Company, 39 Conn. Sup. 240,476 A.2d 1083 (1982) (court recognized that a person may assert a claim for conversion under the UCC where his signature on a check is unauthorized and where his negligence does not substantially contribute to the making of the unauthorized signature).
In counts one and seven of the amended complaint, the plaintiff alleges that certain checks from its checking account with the defendant "were endorsed and presented to the [d]efendant . . . for payment by a person who was neither authorized to endorse the same, nor to present the same for payment." The plaintiff further alleges in these counts that the defendant "accepted and cashed said checks, and paid the amount indicated on said checks to the person who presented CT Page 6109 the same, which person was not the payee named thereon, and which person was not authorized to present or cash said checks; and said [d]efendant thereafter charged the [p]laintiff's said checking account the amount of the checks so cashed." Therefore, the plaintiff has alleged sufficient facts which, if proven, establish a cause of action for conversion under the UCC.
The defendant also argues that the plaintiff has not alleged a sufficient common law cause of action for conversion in counts one and seven. Connecticut law recognizes a common law cause of action for conversion in tort. See Faulkner v.Samperi, 190 Conn. 412, 461 A.2d 681 (1983); Coleman v.Francis, 102 Conn. 612, 129 A. 718 (1925).
 Conversion is usually defined to be an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights . . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite period of time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm.
(Citations omitted.) DiChello v. City Trust Bank Corp., supra, Superior Court, judicial district of New Haven, Docket No. 270965.
In the present case, the plaintiff has alleged sufficient facts which, if proven, give rise to a common law cause of action for conversion. The defendant's payment of a check on forged and/or unauthorized endorsements constitutes acts adverse to the plaintiff and inconsistent with the plaintiff's dominion and to its harm. Therefore, the defendant's motion to strike as to counts one and seven of the amended complaint is denied.
Counts Three and Nine — Negligence
In its memorandum of law in support of its motion to strike, the defendant argues that any cause of action for CT Page 6110 common law negligence in the present case is prohibited because the fraud allocation rules of the UCC displace the otherwise applicable common law negligence rules under §§ 1-103
and 4-401 of the UCC. The defendant contends that common law rules cannot be applied in Code cases if they contradict the Code rules. The defendant further argues that even if the common law rules apply to the present case, the plaintiff has no cause of action because a drawee bank does not owe a duty of ordinary care to the drawer of checks cashed at the drawee bank over forged endorsements as to the manner in which the checks are cashed. The defendant argues that it was the charging of the plaintiff's account, not the cashing of the checks, which proximately caused any loss suffered by the plaintiff in the present case.
In response, the plaintiff argues that if the legislature intended to displace the common law by enacting General Statutes § 42a-4-401, it would have specifically done so in the statute. The plaintiff further argues that in the absence of any language in the statute limiting negligence claims, General Statutes § 42a-4-401 should not be read to preclude negligence causes of action. Finally, the plaintiff argues that General Statutes § 42a-4-406 and, particularly, subsection (e), encompass the plaintiff's right to allege that the defendant bank owed its customers a duty to exercise ordinary care, that the defendant bank failed to exercise reasonable care in the handling of the plaintiff's checks, and that such care contributed to its loss.
For reasons similar to those stated in the analysis of counts one and seven above, the UCC provisions for fraud allocation do not displace the plaintiff's common law claims for negligence. Therefore, the plaintiff is not precluded from bringing a common law cause of action for negligence against the defendant.
The plaintiff has alleged sufficient facts which, if proven, give rise to a cause of action for negligence under both the UCC and common law.
Although negligence is not defined in the UCC, the Connecticut Supreme Court has recognized the interchangeable nature of negligence as meaning "the failure to exercise reasonable or ordinary care" as well as articulating that "[b]y using reasonable care in cases involving a question of CT Page 6111 negligence we mean the care which the ordinary prudent person under the circumstances would exercise." (Citations omitted; internal quotation marks omitted.) Fidelity Casualty Co. v.Constitution National Bank, 167 Conn. 478, 483, 356 A.2d 117
(1975). Moreover:
 [u]nder General Statutes § 42a-4-103, banks come under the general obligations of the use of good faith and the exercise of ordinary care in the handling of negotiable instruments . . . . General Statutes § 42a-4-103[e] provides a rule for determining damages for the failure to exercise ordinary care. The damages rule of that subsection does not become operative, however, until the liability of the bank and some loss to the customer or owner [has been] established.
(Emphasis in original; citations omitted; internal quotation marks omitted.) Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39,43, 492 A.2d 219 (1985).
In counts three and nine of the amended complaint, the plaintiff alleges, inter alia, that it maintained a checking account with the defendant and caused substantial sums of money to be deposited in its account. The plaintiff further alleges that the defendant bank failed to ascertain and/or take reasonable steps to ascertain the authority and validity of the signature of the drawer when it knew, or in the exercise of reasonable care should have known, that the person who presented the checks for cashing was not authorized to do so. Thus, the plaintiff has alleged sufficient facts to give rise to a cause of action for negligence under the UCC.
Similarly, the plaintiff has alleged sufficient facts to establish a common law cause of action for negligence. At common law, "to sustain a cause of action [in negligence], the court must determine whether the defendant owed a duty to the [plaintiff] . . . . Negligence cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform." Sheiman v. Lafayette Bank Trust Co.,
supra, 4 Conn. App. 44-45. Additionally, "[a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his CT Page 6112 act or failure to act." Calderwood v. Bender, 189 Conn. 580,584, 457 A.2d 313 (1983).
In counts three and nine of the amended complaint, the plaintiff alleges that it maintained a checking account with the defendant. Thus, a special relationship existed between the parties, namely that of banker and customer. Therefore, the plaintiff has alleged sufficient facts to show that the defendant owed it a duty to handle its checks with ordinary care. The plaintiff further alleges that the defendant was negligent in that: it failed to ascertain and/or take reasonable steps to ascertain the authority and validity of the signature of the drawer, and the identity of the person who presented said checks for cashing; it knew, or in the exercise of reasonable care should have known, that the person who presented said checks for cashing was not, or was not likely to be, an employee or authorized person of the various vendors who were named payees on said checks, yet it cashed said checks made payable to said vendors.
Viewing these allegations in a light most favorable to the plaintiff, sufficient facts have been alleged which, if proven, give rise to a cause of action for negligence under both the UCC and the common law. Therefore, the defendant's motion to strike as to counts three and nine of the amended complaint is denied.
Counts Four and Ten — Recklessness
In its memorandum in support of its motion to strike, the defendant argues that the plaintiff failed to allege any conduct which, if proven, would amount to willful, wanton and reckless misconduct. The defendant further argues that the plaintiff's allegations in counts four and ten, even if true, amount to nothing more than mere negligence. The defendant argues that any cause of action for willful, wanton or reckless misconduct otherwise available to the plaintiff at common law is displaced by the fraud allocation rules of the UCC.
In response, the plaintiff argues that there is no indication in General Statutes §§ 42a-1-103 or 42a-4-401 that the legislature intended to displace common law recklessness as a theory of liability. The plaintiff further argues that counts four and ten of the amended complaint are sufficiently CT Page 6113 stated to allege recklessness.
The court begins its analysis by reiterating that the UCC fraud allocation rules do not displace actions otherwise available at common law. See Healthcare, Inc. v. Dime SavingsBank of Wallingford, supra, 4 Conn. L. Rptr. 15. Therefore, the defendant's motion to strike as to counts four and ten on this ground is denied. However, such a conclusion is not dispositive of the defendant's motion to strike as to counts four and ten of the amended complaint.
This court must, next, determine whether the plaintiff has alleged sufficient facts in counts four and ten which, if proven, establish claims for recklessness under the UCC and the common law.
 There is a wide difference between negligence and reckless or wanton misconduct. Brock v. Waldron, 127 Conn. 79, 81, 14 A.2d 713 (1940). Recklessness is a state of consciousness with reference to the consequences of one's acts. Commonwealth v. Pierce, 138 Mass. 165, 175 [1884]. It requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent . . . . It is more than negligence, more than gross negligence.
Sheiman v. Lafayette Bank Trust Co., supra, 4 Conn. App. 45-46. The allegations in counts four and ten of the amended complaint are virtually identical to those found in counts three and nine, which sound in negligence. Counts four and ten of the amended complaint are barren of any facts which give rise to a cause of action for recklessness. In counts four and ten, the plaintiff simply reiterates the negligence allegations found in counts three and nine and draws the legal conclusion that such conduct constitutes recklessness. "The mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton misconduct." (Citations omitted.) Sheiman v. Lafayette Bank Trust Co., supra, 4 Conn. App. 46. Therefore, the CT Page 6114 defendant's motion to strike as to counts four and ten of the amended complaint is granted.
Counts Six and Twelve — CUTPA
In its memorandum of law in support of its motion to strike, the defendant argues that counts six and twelve of the plaintiff's amended complaint should be stricken on the ground that the plaintiff fails to allege any type of consumer relationship between itself and the defendant, as required under CUTPA. The defendant further argues that the plaintiff fails to allege any act that is deceptive within the meaning of CUTPA. Finally, the defendant argues that the plaintiff's allegations in counts six and twelve fail to meet the three-pronged unfairness test of CUTPA.
In response, the plaintiff argues that banks are persons against whom a CUTPA action may be instituted and with whom the plaintiff has a consumer relationship. The plaintiff further argues that it has sufficiently alleged facts concerning acts or practices of the defendant which violate CUTPA. Finally, the plaintiff argues that the allegations contained in counts six and twelve of the amended complaint meet the "cigarette rule" criterion adopted by the Connecticut Supreme Court.
The banking industry is governed by CUTPA. See NormandJosef Enterprises, Inc. v. Connecticut National Bank,230 Conn. 486, 521, 646 A.2d 1289 (1994). "On their face, the definitional sections of CUTPA include banks. A bank is a `person,' as defined in § 42-110a(3), and is engaged in the conduct of `trade' or `commerce,' as defined in § 42-110a(4)." (Footnotes omitted.) Normand Josef Enterprises, Inc. v.Connecticut National Bank, supra, 230 Conn. 509-10. Similarly, the plaintiff in the present case, a Connecticut corporation, is a person under the definitional sections of CUTPA. See General Statutes § 42-110a(3).
Before a plaintiff can recover under CUTPA, "it must possess at least some type of consumer relationship" with the party who allegedly caused the harm complained of. Jackson v.R.G. Whipple, Inc., 225 Conn. 705, 727, 627 A.2d 374 (1993). "CUTPA was, after all, enacted by the legislature to `put Connecticut in the forefront of state consumer protection.'" Id. CT Page 6115
The defendant argues that the plaintiff's amended complaint fails to contain any type of allegations of a consumer relationship between itself and the defendant. However, in the third paragraph of counts six and twelve of the amended complaint, the plaintiff makes the following allegations: "At all times relevant herein, the Plaintiff, Leaksealers, Inc., maintained a checking account . . . with the Defendant, CNB, and, from time to time, caused substantial sums of money to be deposited in said account." Amended Complaint, counts six and twelve, para. 3. Construing these facts in a light most favorable to the plaintiff, this court concludes that the plaintiff has sufficiently alleged that a consumer relationship existed between itself and the defendant. See Venture Resource Group, Inc. v. New HavenSavings Bank, et al, 11 Conn. L. Rptr. 597-99 (July 18, 1994, Hennessey, J.) (allegations concerning bank's actions involving third-party defendant's bank account are consumer-oriented in nature); See also Gateway Bank v. Racquetball Spa, Inc.,10 Conn. L. Rptr. 170-72 (November 15, 1993, Lager, J.) (granting of loans and mortgages, whether to individuals or commercial customers, is clearly a consumer-oriented activity which is subject to the provisions of CUTPA).
The existence of a consumer relationship between the plaintiff and defendant does not end the inquiry of whether the plaintiff has alleged sufficient facts to establish a claim under CUTPA. This court must, next, determine whether the plaintiff has sufficiently alleged facts to show that the defendant's conduct amounts to a violation of CUTPA.
 It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or CT Page 6116 other businessmen].
 All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.
(Citations omitted; internal quotation marks omitted.) NormandJosef Enterprises, Inc. v. Connecticut National Bank, supra,230 Conn. 522.
In its memorandum of law in support of its motion to strike, the defendant argues that the plaintiff fails to allege any act that is deceptive within the meaning of CUTPA. The defendant further argues that the plaintiff's allegations fail to meet the three-pronged unfairness test of CUTPA.
In response, the plaintiff does not challenge the defendant's attack that the plaintiff fails to allege any act that is deceptive within the meaning of CUTPA. Rather, the plaintiff argues that the allegations in counts six and twelve meet the "cigarette rule" adopted by the Connecticut Supreme Court. Citing R. Bartley Halloran v. Spillane's ServiceCenter, Inc., 1 Conn. L. Rptr. 790 (June 21, 1990, Maloney, J.), the plaintiff further argues that cases involving conversion of automobiles demonstrate that a CUTPA violation can be premised on a common law claim for conversion.
Additionally, the plaintiff argues that General Statutes § 42a-4-401 provides a statutory basis and embodies a public policy concerning the maintenance of accounts at banks. The plaintiff argues that the bank's persistent refusal to restore and credit the plaintiff's checking account that it improperly charged violates CUTPA. The plaintiff argues that the allegations in counts six and twelve demonstrate a public policy that is being offended by the defendant's actions and, therefore, the first criterion of the "cigarette rule" is satisfied. Finally, the plaintiff argues that it has alleged that it suffered substantial injury as a result of the defendant's actions, thus, satisfying the third criterion of the cigarette rule. CT Page 6117
This court finds that the plaintiff has not alleged sufficient facts in its amended complaint to establish a claim that the defendant's acts constitute a violation of CUTPA. The case cited by the plaintiff, Halloran v. Spillane'sService Center, Inc., supra, in support of its argument that a CUTPA violation can be premised on a common law claim for conversion is inapposite.
The Halloran case was a class action involving the practices of a towing business regarding the release of vehicles which had been towed and stored at the request of the private property owners. Id., 790-91. The court found that the defendant towing business' practices were followed "ruthlessly" and "sometimes violently" by the defendant's employees. Id., 791-92. The court further found the practices to be "oppressive" and to have caused substantial injury to the plaintiff class. Id., 795. Finally, the court found the defendant's refusal to return the towed vehicles on demand to be a conversion of the property and that such conduct violated the public policy embodied in the common law tort of conversion. Id., 796.
A careful reading of Halloran reveals that it was not the technical act of conversion itself which led the court to conclude that the defendant's conduct constituted a violation of CUTPA. Rather, it was the circumstances surrounding the conversion that led the court to find a CUTPA violation. SeeHalloran v. Spillane Service Center, supra,1 Conn. L. Rptr. 796-97. In the present case, the plaintiff makes no allegations in counts six and twelve which even remotely approach the kind of conduct addressed by the court inHalloran.
The plaintiff also alleges in counts six and twelve that the defendant's improper charging of its account involves a violation of public policy because, if the charges were improper, they were made in violation of General Statutes § 42a-4-401. Additionally, the plaintiff argues that the bank's "persistent refusal" to recredit the plaintiff's account upon demand constitutes an unfair trade practice.
A violation of a statute does not necessarily give rise to a violation of public policy and, in turn, a violation of CUTPA. See Normand Josef Enterprises, Inc. v. ConnecticutCT Page 6118National Bank, supra, 230 Conn. 524; Halloran v. SpillaneService Center, Inc., supra, 1 Conn. L. Rptr. 790. Moreover, a "[v]iolation of an identifiable public policy alone may be insufficient under certain circumstances to support a CUTPA violation." (Citations omitted.) Francoline v. Klatt, 26 Conn. App. 203,211, 600 A.2d 8 (1991). As the Superior Court recognized in Halloran, where a party claims a CUTPA violation based on an alleged violation of a public policy statute, the court's focus should be on the circumstances surrounding the violation of the statute, rather than on a technical violation of the statute itself. In the present case, none of the circumstances surrounding the defendant's alleged conversion of the plaintiff's checks amounts to a deceptive or unfair trade practice, as that term is defined under CUTPA.
The plaintiff also argues that it has suffered a loss in excess of $100,000 and that this loss meets the substantial injury test for an unfairness claim under CUTPA. However, as our Supreme Court articulated in A-G Foods, Inc. v. PepperidgeFarms, Inc., 216 Conn. 200, 579 A.2d 69 (1990):
 To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided. . . . This test is equally applicable when a business person or competitor claims substantial injury.
(Emphasis in original; citations omitted.) Id., 216.
Against this background, the plaintiff has not alleged sufficient facts to establish a claim under CUTPA. Although the plaintiff may have suffered a loss as a result of the defendant's conduct, it cannot be fairly said that such a loss constitutes a substantial injury within the meaning of CUTPA. Nor can this court fairly conclude that the plaintiff could not reasonably have avoided such an injury.
Because this court cannot determine from the allegations in counts six and twelve whether the plaintiff "could not have reasonably avoided" its alleged injury, the plaintiff has failed to show that the defendant caused an "unjustified CT Page 6119 consumer injury," a necessary predicate for recovery under CUTPA. Therefore, the defendant's motion to strike as to counts six and twelve of the amended complaint is granted.
Mary R. Hennessey, Judge