******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HAWORTH COUNTRY CLUB, LLC, ET AL.
## *v.* UNITED BANK
## (AC 45666)

Suarez, Westbrook and Harper, Js.

### *Syllabus*

The plaintiff, H Co., individually and derivatively on behalf of N Co., appealed
to this court, following the granting of a motion to strike, from the
judgment of the trial court rendered for the defendant, U Co., a banking
institution, on all counts of H Co.'s complaint. H Co. alleged that U Co.
improperly opened a bank account in the name of V Co., specifically, that
U Co. failed to exercise due diligence to determine the legal existence
of V Co. in accordance with various state and federal banking statutes
and regulations, which permitted the diversion of moneys away from
H Co. and N Co. *Held*:

1. H Co. could not prevail on its claim that the trial court did not apply the
proper legal standard in ruling on the motion to strike: H Co. failed to
articulate how the court failed to utilize the proper legal standard;
moreover, in its decision, the trial court set forth the proper legal stan-
dard to be applied in ruling on a motion to strike and, in the absence
of some clear indication to the contrary, this court presumed the trial
court applied the correct legal standard.

2. H Co. could not prevail on its claim that the trial court erred in concluding
that H Co. was not entitled to bring a cause of action against U Co.: H
Co.'s status as a noncustomer of U Co. was dispositive as to preclude
any allegations of liability against U Co., as H Co. failed to allege any
circumstance that would give rise to a legal duty of care owed by U
Co.; moreover, the issues identified by H Co. regarding V Co.'s documen-
tation, which was used by U Co. to open the V Co. account, did not
demonstrate that a reasonable person would anticipate that a third-
party noncustomer of U Co. would likely suffer harm from the opening
of the V Co. account.

3. H Co. could not prevail on its claims that the trial court erred in concluding
that its allegations that U Co. violated banking statutes and regulations
regarding what a bank is required to do before opening an account for
a customer were not allegations of conduct offensive to public policy
under the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a
et seq.), and that the statute (§ 35-1) regarding the use of fictitious
business names was inapplicable to H Co.'s claims to support a per se
violation of CUTPA: H Co.'s complaint did not specify how the documen-
tation obtained by U Co. insufficiently complied with any of the identified
statutes or regulations, and, to the extent H Co. argued that U Co.'s
failure to obtain a current certified copy of the articles of incorporation

or other current certified corporate document violated a federal regulation (31 C.F.R. § 1020.220), such argument was legally flawed, as H Co.'s complaint did not demonstrate how U Co. was subject to the regulation; moreover, even if it was assumed that U Co.'s account opening procedures fell within the ambit of 31 C.F.R. § 1020.220, the circumstances alleged by H Co. did not establish a violation of the regulation, as, contrary to H Co.'s contention, the regulation does not mandate that U Co. must possess a current certified copy of the articles of incorporation or other current certified corporate document, rather, the regulation suggests the type of documents a bank may require under its opening procedures to form a reasonable belief as to the identity of its customers; furthermore, § 35-1 did not apply to U Co. in the present case, as U Co. did not conduct or transact business under an improper name, rather it was V Co. whom H Co. alleged conducted business under a fictitious name.

4. H Co. could not prevail on its claim that the trial court erred in failing to address that U Co., as of the date of service of the lawsuit, was on notice that V Co.'s bank account had been opened under an improper and fictitious name and that the moneys in the account were owned by another party: H Co. did not allege facts demonstrating that U Co.'s operating procedures were subject to 31 C.F.R. § 1020.220, and, even if it was assumed that regulation applied to U Co., the regulation was not applicable to the circumstances of this case, as it only applies to a bank's opening procedures when verifying its customer's identity through nondocumentary methods, and, in the present case, U Co. relied on documents from V Co. to open the V Co. account; moreover, H Co.'s complaint did not establish how U Co.'s opening procedures prevented U Co. from forming a reasonable belief as to the identity of V Co. based upon the documents it received in connection with the opening of the V Co. account; furthermore, H Co. failed to cite any applicable legal authority that would impose a duty on U Co. to reinvestigate the identity of V Co. upon being served with a complaint alleging the moneys in the V Co. account belonged to a noncustomer of U Co.

Argued November 16, 2023—officially released July 16, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of a fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the matter was transferred to the judicial district of Hartford, Complex Litigation Docket; thereafter, the court, *Noble, J.*, granted the defendant's motion to strike, and the plaintiffs appealed to this court; subsequently, the court, *Noble, J.*, granted the defendant's

motion for judgment and rendered judgment for the defendant, and the plaintiffs filed an amended appeal. *Affirmed.*

*Michael S. Taylor*, with whom were *Brendon Levesque*, and, on the brief, *Steven Berglass* and *Rosie Miller*, for the appellants (plaintiffs).

*Thomas S. Lambert*, with whom were *Meagan A. Cauda*, and, on the brief, *James T. Shearin*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Haworth Country Club, LLC, individually and derivatively on behalf of Newberry Village Holdings, LLC (NVH), appeals, following the granting of a motion to strike,[1] from the judgment of the trial court rendered in favor of the defendant, United Bank, on all counts of the plaintiff's third amended complaint. On appeal, the plaintiff claims that, in ruling on the motion to strike, the court (1) did not apply the proper legal standard, (2) erred in concluding that the plaintiff was not entitled to bring a cause of action against the

---

[1] On July 26, 2022, the plaintiff appealed from the trial court's July 8, 2022 decision striking its third amended complaint. On October 20, 2022, this court ordered, sua sponte, that the parties file memoranda addressing why the appeal should not be dismissed for lack of a final judgment. See *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 90, 54 A.3d 658 (2012) ("[t]he granting of a motion to strike . . . ordinarily is not a final judgment because our rules of practice afford a party a right to amend deficient pleadings" (internal quotation marks omitted)), cert. denied, 307 Conn. 950, 60 A.3d 740 (2013). On October 24, 2022, the defendant moved for an order of judgment on each count of the plaintiff's third amended complaint. On November 29, 2022, the court granted the defendant's motion for judgment on the stricken third amended complaint in favor of the defendant. On December 15, 2022, the plaintiff filed this amended appeal. Because the original appeal was not taken from an appealable final judgment, it is dismissed. See Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, any amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed").

defendant, and that the plaintiff's status as a noncustomer of the defendant is dispositive as to preclude any allegations of liability against the defendant, (3) erred in concluding that the plaintiff's allegations that the defendant violated banking statutes and regulations regarding what a bank is required to do before opening an account for a customer are not allegations of conduct offensive to public policy under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and that General Statutes § 35-1 is inapplicable to the plaintiff's claims, and (4) improperly failed to address that the defendant, as of the date of service of this action, was on notice that the subject bank account had been opened under an improper and fictitious name and that the money in the account was owned by another party.[2] We affirm the judgment of the trial court.

The following procedural history, as set forth in the court's July 8, 2022 memorandum of decision, is relevant to our resolution of this amended appeal. "The plaintiff alleges in its [third amended] complaint that the defendant, a banking institution, improperly opened a bank account in the name of Newberry Village, LLC (NV), which permitted the diversion of moneys away from the plaintiff and [NVH], a nonparty to the present action. The impropriety alleged by the plaintiff consists of the failure to exercise due diligence to determine the legal existence of NV in accordance with state and federal banking statutes and regulations. The plaintiff asserts this failure caused both [it] and NVH to suffer

---

[2] The plaintiff also claims that the court erred in not considering our Supreme Court's decision in *Ulbrich* v. *Groth*, 310 Conn. 375, 78 A.3d 76 (2013), and in misinterpreting this court's decision in *Sheiman* v. *Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 492 A.2d 219 (1985). As the court's interpretation of *Sheiman* and its decision not to consider *Ulbrich* are interrelated to the plaintiff's second and third claims, respectively, we address the court's interpretation and consideration of those cases, or lack thereof, in parts II and III of this opinion.

damages. In particular, [the plaintiff] alleges it loaned $6,000,000 to NVH to be used exclusively for construction of a housing development that was not repaid as a result of NVH's diversion of moneys to NV.

"The plaintiff incorporates the following facts into each count of its [third amended] complaint related to the opening of the account, which it alleges raised substantial questions related to the propriety of the opening. In December of 2018, NVH issued a check in the amount of $60,000 from a different bank, which represented virtually NVH's entire balance, to an attorney. The attorney deposited the check into his law firm's account and then issued two separate checks totaling $60,000 with the defendant, presumably although not expressly stated, for purposes of opening NV's account with the defendant. Thereafter, in March of 2019, a deposit in the amount of $212,252.75 was made in the name of NV with the defendant. The plaintiff alleges this was suspicious activity that required [the defendant] to report and take action as mandated by unspecified laws, statutes, regulations and requirements. An 'inordinate' amount of withdrawals were undertaken by a member of NV and his associates and a retainer was paid to another attorney. The plaintiff alleges in its [third amended] complaint that had the defendant complied 'with the law,' it would not have opened an account under the name of NV. This is so because the plaintiff claims no Certificate of Legal Existence would have been issued because NV was not up-to-date on annual report filings and the defendant would not have been able to verify a valid tax identification number because NV had filed a final tax return for the tax year ending December 31, 2016.

"The acts and omissions of the defendant in the opening of the account are alleged to include the failure to identify and verify all owners and beneficial owners, including NVH; the defendant accepted only a 'Limited

Liability Company Authorization' signed by one of NV's principals which should have indicated the date the authorizing meeting took place; a copy of the meeting minutes of the resolution and an attestation signature that was either nonexistent or blank; a Certificate of Legal Existence; and the acceptance of articles of incorporation of a company with the name of '*Newbury* Village, LLC' rather than articles of incorporation of NV, which is properly spelled '*Newberry* Village, LLC.' . . . Additionally, the plaintiff alleges that the present action was commenced on April 12, 2019, which should have put the defendant on notice that the money in NV's account was the property of the plaintiff and not NV. The plaintiff asserts that this notice obligated the defendant to institute an interpleader pursuant to General Statutes § 52-484, place a freeze or hold on the account and further obligated it to research public records which would have revealed that a lawsuit has been pending since February of 2019, in the New Haven judicial district in which the plaintiff alleged that the managing member of NVH has been removed and replaced, moneys were in dispute, and that the usage of NVH funds to fund a bank account under the name of NV was questionable. . . .

"The [third amended] complaint is clear that the plaintiff was not a customer of [the defendant]. The plaintiff seeks to impose liability upon the defendant by a claim that it owed a common-law duty derived from its obligations pursuant to sixteen federal and state statutes and regulations, most of which relate to statutory banking requirements including the USA Patriot Act of 2001, 107 Pub. L. No. 56, 115 Stat. 272, § 42-110a et seq., related to the opening of accounts, but also including [CUTPA], and General Statutes § 42a-3-420, which imposes liability on banks for statutory conversion pursuant to the Uniform Commercial Code

. . . . The statutes are characterized as having the purpose of prohibiting 'money laundering, diversion, hiding and concealment of moneys in banking.' In its eight count, fifty-five page [third amended] complaint, the plaintiff asserts claims of breaches of statutory violations by the [defendant], which, although not explicitly stated in the complaint, involve the failure to properly identify the legal existence of the depositor, NV, the failure to freeze or hold the moneys and to interplead the account moneys into court (first count); negligence (second count); breach of a fiduciary duty (third count); a violation of CUTPA (fourth count); a breach of the implied covenant of good faith and fair dealing (fifth count); violations of General Statutes § 52-562[3] . . . (sixth count); a declaratory judgment request (seventh count), and spoliation of evidence (eighth count).[4]

"Significantly, the plaintiff's second amended complaint in the present action, which alleged similar theories of liability on the grounds of deficiencies by the defendant in opening the account, was stricken in its entirely by the court, *Schuman, J.*, [on] September 3, 2021. The court ruled in that decision that because there was no contract between the defendant and the plaintiff, the former had no legal duty to the plaintiff; absent a borrower-lender or bank-customer relationship, no fiduciary duties were owed to the plaintiff . . .

---

[3] General Statutes § 52-562 provides: "When any person is guilty of fraud in contracting a debt, or conceals, removes or conveys away any part of his property, with intent to prevent it from being taken, by legal process, or refuses to pay any debt admitted by him or established by a valid judgment, while having property, not exempt from execution, sufficient to discharge the debt, concealed or withheld by him so that the property cannot be taken by legal process, or refuses to disclose his rights of action, with intent to prevent the rights of action from being taken by foreign attachment or garnishment, any creditor aggrieved thereby may institute an action against him, setting forth his debt and the fraudulent act or acts particularly in the complaint."

[4] During oral argument before this court, the plaintiff abandoned its claims on appeal with respect to counts one, three, five, and eight of its third amended complaint.

and the derivative action failed because the plaintiff failed to plead the existence of a demand as required by General Statutes § 34-271c.[5] The present third amended complaint was timely filed by the plaintiff."[6] (Emphasis in original; emphasis omitted; footnotes added; footnote in original.)

On November 8, 2021, the defendant filed a motion to strike the plaintiff's third amended complaint on the basis that the defendant does not owe a legal duty to the plaintiff, a noncustomer and legal stranger to the defendant. In its memorandum of law in support of its motion to strike, the defendant argued, with respect to the negligence count, that there is no special relationship between the plaintiff and the defendant that would give rise to any duty owed by the defendant to the plaintiff. The defendant also argued that it was not foreseeable that its purported issues with opening the subject bank account would harm third-party noncustomers of the defendant, like the plaintiff. The defendant further argued that the statutes alleged in the plaintiff's third amended complaint do not provide for a private cause of action against the defendant.

With respect to the plaintiff's fourth count, alleging a violation of CUTPA, the defendant argued that its alleged actions do not rise to the level of immoral, unethical, oppressive, or unscrupulous conduct, or any conduct offensive to public policy that would support a CUTPA cause of action. Moreover, the defendant asserted that the plaintiff's CUPTA claim is the same as the CUTPA claim raised in the plaintiff's second

---

[5] "[Section] 34-271c mandates a demand for company action to enforce a company right be made by a member of [a limited liability company] on other members prior to the commencement of a derivative claim."

[6] The court noted that the plaintiff's third amended complaint was "replete with repetitive allegations involving immoderate use of synonyms and over incorporation of paragraphs present in the second amended complaint that results in confusing, and at times unintelligible, allegations."

amended complaint, which Judge Schuman struck previously on the basis that, "[c]ontrary to the plaintiff's suggestion, the [defendant] has no duty to research pending lawsuits against a prospective customer and determine, without any court proceedings, that the customer owes money to a third party such as the plaintiff." Regarding the plaintiff's sixth count, alleging a violation of § 52-562, the defendant argued that "[the plaintiff] is not bringing a claim against the [defendant] pursuant to those statutes. . . . The [defendant] is not alleged to have fraudulently conveyed anything, nor did it defraud [the plaintiff]. Those actions were undertaken by others." As to the plaintiff's seventh count, seeking a declaratory judgment, the defendant argued that, "[b]ecause the [defendant] does not owe any duty to [the plaintiff], and because [the plaintiff's] causes of action must fail as a result, there is still no valid underlying cause of action in which [the court] can make a declaration as requested by [the plaintiff] . . . ."

On January 7, 2022, the plaintiff filed a memorandum of law in opposition to the defendant's motion to strike. In its memorandum of law, the plaintiff argued that NV was not in legal existence at the time the bank account was opened in December, 2018, as NV had been dissolved in December, 2016, with the filing of its final tax return. The plaintiff also argued that, "as of April, 2019, when [the defendant] was served with this lawsuit, wherein the lawsuit stated the moneys were the property of [NVH] (and not [NV]), the defendant was on direct notice and thus required by law to take actions immediately thereon which the defendant failed to do." Furthermore, the plaintiff asserted that the defendant's noncompliance with the statutes and regulations cited in its third amended complaint, established a duty under *Sheiman* v. *Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 45, 492 A.2d 219 (1985).[7] Specifically, the plaintiff

---

[7] In *Sheiman*, this court held that "[t]he requisite duty to use care may stem from a contract, from a statute, or from circumstances under which

contended that the defendant opened an illegitimate account under an improper name which constitutes a circumstance where a reasonable person would anticipate that harm would be suffered by the rightful owners of the money deposited.

With respect to the plaintiff's CUTPA count, the plaintiff argued that the defendant's noncompliance with the statutes and regulations alleged in its third amended complaint violates public policy. The plaintiff also argued that the defendant's involvement with the use of a fictitious name, due to the plaintiff's contention the NV was not in legal existence at the time the bank account was opened, violated § 35-1 and constituted a per se violation of CUTPA. Regarding its sixth count alleging a violation of § 52-562, the plaintiff asserted that "the defendant was required to identify and verify [NV] prior to opening an account, and to identify and verify the depositor as well. In failing to do so, the defendant's conduct facilitated improper transactions." (Emphasis omitted.) As to its request for a declaratory judgment in count seven, the plaintiff argued that it alleged both legal and equitable interests that are in danger of loss or uncertainty, and that the defendant's conduct in failing to comply with the statutory requirements to open a bank account created an actual and substantial question in dispute.

On April 13, 2022, the court, *Noble, J.*, held oral argument on the defendant's motion to strike. At the conclusion of oral argument, the court requested supplemental briefing on the following three issues: (1) the statutory requirements for opening a bank account, (2) whether the statutes or regulations cited by the plaintiff in its operative third amended complaint regarding the

a reasonable person would anticipate that harm of the general nature of that suffered was likely to result." *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 45.

improper opening or operation of a bank account provide for a private cause of action, and (3) whether NV's failure to file certain corporate documents for tax returns meant that it was no longer in legal existence at the time of the account opening. Thereafter, the parties submitted supplemental memoranda addressing the issues identified by the court. In its supplemental memorandum of law, the plaintiff conceded that its third amended complaint is "not predicated as a private cause of action under federal banking statutes . . . ." On June 29, 2022,[8] the court held oral argument on the three issues raised by the court and addressed in the parties' supplemental memoranda.

On July 8, 2022, the court issued a memorandum of decision granting the defendant's motion to strike in its entirety. As to those counts remaining at issue in the present appeal, the court determined that the defendant's second count, sounding in negligence, should be stricken because "the statutes [cited within the third amended complaint] do not create a duty upon which a claim of negligence may be asserted." The court explained that the plaintiff merely assumes that the harm it suffered was foreseeable under the circumstances of the present case without explaining why the harm was foreseeable. The court further explained that "foreseeability alone, without duty, is insufficient to support a cause of action for negligence." To the extent the plaintiff argued that the statutes cited in its third amended complaint "provide the basis for a determination that public policy suggests the imposition of a duty the violation of which renders the defendant answerable to a claim of negligence," the court declined to consider such argument due to the plaintiff's inadequate briefing of the issue. As to the plaintiff's fourth count,

---

[8] We note that there appears to be a scrivener's error in the court's memorandum of decision regarding the date of this oral argument, as the transcript for this proceeding is dated June 27, 2022.

alleging a violation of CUTPA, the court stated that, "[a]t best, the plaintiff describes a mere technical violation of any statute insufficient, without more, to demonstrate that the conduct offends public policy, implicate[s] the concept of unfairness or cause[s] the type of substantial injury that CUTPA was designed to address. . . . There is nothing in the plaintiff's complaint that suggests an 'immoral, unethical, oppressive, or unscrupulous' character of the defendant's opening procedure . . . ." (Citation omitted.) Furthermore, the court reasoned that § 35-1 does not apply to the defendant because the defendant "did not conduct business under an illegitimate name. Rather, it was NV that the plaintiff alleges was the malefactor." Regarding the plaintiff's sixth count, asserting a claim for fraud in contracting a debt in violation of § 52-562, the court struck the count on the basis that the claim failed to state a legally sufficient claim. The court reasoned that "[t]he defendant is not alleged to have been a debtor of the plaintiff. Indeed, the only such claim is made against NVH and not the defendant." As to the plaintiff's seventh count, seeking a declaratory judgment, the court stated that "[t]he granting of the present motion to strike in its entirety eliminates any substantial question in dispute or a substantial uncertainty of legal relations between the parties." This amended appeal followed. Additional procedural history will be set forth as necessary.

Before addressing the merits of the plaintiff's claims, we begin by setting forth the applicable standard of review. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been

stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sieranski* v. *TJC Esq, A Professional Services Corp.*, 203 Conn. App. 75, 81, 247 A.3d 201 (2021). "Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . [W]e assume the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . A [motion to strike] admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) *Desmond* v. *Yale-New Haven Hospital, Inc.*, 212 Conn. App. 274, 284, 275 A.3d 735, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022).

"Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted

in such a way so as to strain the bounds of rational comprehension." (Emphasis omitted; internal quotation marks omitted.) *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023).

I

The plaintiff first claims that the court did not apply the proper legal standard in ruling on the defendant's motion to strike. Specifically, the plaintiff argues that "[a] trial court reviews a motion to strike to determine whether the allegations are sufficiently pled, not whether the plaintiff will prevail at trial. . . . An amended pleading is sufficient if the causes of action are stated, 'in a manner responsive to the defects identified by the trial court in its grant of the motion to strike the earlier pleading.' " (Citation omitted.) In support thereof, the plaintiff recites the proper legal standard to be applied in ruling on a motion to strike, however, it undertakes no further analysis of this claim. We are not persuaded.

The standard of review regarding a ruling on a motion to strike is set forth previously in this opinion. In considering "[w]hether the court applied the proper legal standard in ruling on the motion to strike . . . we exercise plenary review." *Plainville* v. *Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 63, 187 A.3d 1174 (2018). In its decision, the court set forth the proper legal standard to be applied in ruling on a motion to strike. In the absence of some clear indication to the contrary, our Supreme Court and this court have held that we presume the court applied the correct legal standard. *In re Annessa J.*, 343 Conn. 642, 676, 284 A.3d 562 (2022); see also *Plainville* v. *Almost Home Animal Rescue & Shelter, Inc.*, supra, 64. In the present case, the plaintiff has failed to articulate how the court failed to utilize the proper legal standard in ruling on the defendant's motion to strike. Accordingly, in the

absence of any clear indication to the contrary, we conclude that the court applied the proper legal standard in granting the defendant's motion to strike.

II

The plaintiff claims that the court erred in concluding that the plaintiff was not entitled to bring a cause of action against the defendant, and that the plaintiff's status as a noncustomer is dispositive as to preclude any allegations of liability against the defendant. Specifically, the plaintiff argues that "[a]llegations of a bank's noncompliance with statutes and requirements prior to opening a bank account satisfy the . . . rule [in *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 45] in that violation of these statutes and requirements would necessarily cause any reasonable person to anticipate that harm of the general nature of that suffered would be likely to result." We are not persuaded.

The following additional procedural history is relevant to our resolution of the plaintiff's claim. In its July 8, 2022 memorandum of decision, the court stated that "[t]he defendant's motion to strike is premised on the observation that because the plaintiff is not a customer of the defendant it is in effect a legal stranger to the [defendant] and accordingly the [defendant] is unencumbered by any legal duty to the plaintiff. This tenet was central to the court's granting of the motion to strike the second amended complaint. While it is clear that a bank owes a duty of care to its customers arising out of the bank's contract with its customer . . . a duty to noncustomers, such as the plaintiff, must arise out of a separate contract, statute or circumstances which would give rise to a duty owed by [the defendant] which would support an action in negligence. *Sheiman* v. *Lafayette Bank & Trust Co.*, [supra, 4 Conn. App. 45] (defendant bank owed no duty to plaintiffs—heirs of decedent's estate—for failure to exercise due care in

cashing check presented by a person not the payee/decedent). This principle is simply a restatement of the more general rule that, absent a legal duty, a plaintiff cannot recover in negligence from the defendant. . . .

"In its third amended complaint, the plaintiff, mindful no doubt, of its status as a noncustomer, added to its complaint sixteen statutes and regulations which it claims obliged the defendant to undertake certain actions in the opening of the NV account. . . . However, the plaintiff concedes in its supplemental brief . . . and . . . repeated at oral argument, that it does not claim that any of the federal statutes it cited provide for a private cause of action. There exists in our law the well settled fundamental premise that there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the [plaintiff bears] the burden of demonstrating that such an action is created implicitly in the statute. . . . Where, as in the present case, the plaintiff does not even claim that a private cause of action exists as to the federal statutes and regulations, the violation of these federal statutes and regulations provides a legally insufficient claim for relief.

"The remaining state statutes do not afford the plaintiff relief. The determination of whether a private cause of action is implicit in a statute not expressly providing one is dependent on a three part test: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes for the legislative scheme to imply such a remedy for the plaintiff. . . . [T]he foregoing test is not vital to the determination of the motion to strike this count, not the least

because the plaintiff has not undertaken any such analysis. Courts are not required to review claims that are inadequately briefed. . . . No analysis of any sort was undertaken by the plaintiff related to the following statutes which were pleaded as having been violated by the defendant: General Statutes § 36a-606a,[9] which requires financial [institutions] to establish anti money laundering programs; General Statutes § 36a-287, which requires financial institutions to comply with the applicable provisions of the Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5311 et seq.; General Statutes § 53-275 et seq., which prohibits money laundering activities; and § 35-1, which prohibits the use of a fictitious name in conducting or transacting business. While the plaintiff includes § 52-484[10]—applicable to interpleaders—in the list of statutes, the violation of which caused it injury, this statute does not create a cause of action but merely permissively permits the filing of an interpleader. . . .

"The plaintiff did argue that a private cause of action was explicit in three statutes. It is true that [CUTPA] does provide a private cause of action, but the plaintiff has not alleged the statutory elements requisite for such [a] claim,[11] either in the first count or in the stand-alone

[9] "General Statutes § 36a-606a (a) provides in [relevant] part that '[e]ach licensee [person engaged in money transmission] shall comply with the applicable provisions of the Currency and Foreign Transactions Reporting Act, 31 USC Section 5311 et seq., as from time to time amended, and any regulations adopted under such provisions, as from time to time amended and, upon request, shall provide proof of such compliance to the commissioner. In addition to any other remedies provided by law, a violation of such federal law or regulation shall be deemed a violation of this section and a basis *upon which the commissioner* may take enforcement action pursuant to section 36a-608.' (Emphasis added.)"

[10] "General Statutes § 52-484 provides in relevant part that '[w]henever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader . . . .' "

[11] "CUTPA provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any

claim asserted in the fourth count . . . . [Section] 52-562, the Uniform Fraudulent Transfer Act, creates liability in fraud for contracting debt. However, the plaintiff has not alleged that the defendant fraudulently conveyed anything, nor that it defrauded it. Finally, § 42a-3-420[12] does create a private cause of action for statutory conversion but the plaintiff asserts impropriety only in the opening of the account, not in the conversion of an instrument within the ambit of the statute. For the foregoing reasons, the motion to strike the first count is stricken in its entirety." (Citations omitted; footnotes in original; internal quotation marks omitted.)

As to the plaintiff's second count, sounding in negligence, the court determined that it should be stricken because "the statutes [alleged in the operative complaint] do not create a duty upon which a claim of negligence may be asserted. . . . The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action. . . . Thus, [t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . A duty of care may arise from contract, from a statute, or from

trade or commerce and provides a private cause of action to [a]ny person who suffers any ascertainable loss of money . . . as a result of the use or employment of a [prohibited] method, act or practice . . . . (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 213–14, 932 A.2d 401 (2007)."

[12] "General Statutes § 42a-3-420 (a) provides that '[t]he law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.' "

circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. . . . [T]he test for the existence of a legal duty [of care] entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in this case. . . .

"[A] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. . . .

"In considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. . . .

"The plaintiff asserts that the facts alleged in its complaint—in its view demonstrating an illegitimate

account opened under a false name in circumstances in which the [defendant's] conduct is not compliant with the enumerated statutes and regulations—create a condition wherein any reasonable person would anticipate that harm would be suffered by the rightful owners of the moneys. . . . The plaintiff, however, merely assumes foreseeability under these circumstances and advances no argument as to why this must be so. . . . The plaintiff's bald assertion in the present case that foreseeability exists in the circumstances set forth in its complaint is without merit.

"As our law instructs, moreover, foreseeability alone, without duty, is insufficient to support a cause of action for negligence. The plaintiff has not made the argument that the account opening or screening procedures it relies upon exist to protect strangers with whom they do no business. . . . [T]he plaintiff, having failed to establish that the statutes relied upon provide a private cause of action, provides almost no analysis of whether these same statutes provide the basis for a determination that public policy suggests the imposition of a duty the violation of which renders the defendant answerable to a claim of negligence. . . .

"What the plaintiff has done is to refer the court to cases which it asserts support its claim for liability. None of them address a bank's liability to a third-party noncustomer for the improper opening of a bank account. In *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 46, the Appellate Court found no duty on a bank to a third party for the improper negotiation of an unendorsed check. In *East Shore Glass, Inc.* v. *Bank of America, N.A.*, [Superior Court, judicial district of New Haven, Docket No. CV-17-6069615-S (March 28, 2019) (68 Conn. L. Rptr. 314, 319)], the court held that while there was no common-law cause of action against a depositor bank for conversion related to check fraud by a former employee of the plaintiff who either

forged or deposited checks with no endorsement with the defendant, there was a duty owed by the bank to the plaintiff, a noncustomer, to exercise care in negotiating checks to undertake reasonable care to determine that an instrument presented for payment is endorsed and that the individual presenting it is the named payee.[13] Similarly, in *Red Law Firm, LLC* v. *Webster Bank*, Superior Court, judicial district of New Haven, Docket No. CV-12-6029913-S (February 7, 2014) (57 Conn. L. Rptr. 640, 643), the court held that the defendant bank had a duty to a customer law firm to take reasonable steps to determine that an instrument presented for payment was endorsed and that the individual presenting it was the named payee. . . . [N]one of these cases relied upon by the plaintiff, reviewed a factual circumstance involving a claim of liability of a bank to a third-party noncustomer for the improper opening of a bank account, and thus the plaintiff's reliance is misplaced. In the absence of the requisite elements of foreseeability and duty, or the appropriate briefing relative thereto, the motion to strike the second count is granted." (Citations omitted; footnote in original; internal quotation marks omitted.)

In its amended appeal, the plaintiff argues that its status as a noncustomer of the defendant is not dispositive as to the defendant's liability. The plaintiff relies on this court's decision in *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 39, and two Superior Court cases, *East Shore Glass, Inc.* v. *Bank of America, N.A.*, supra, 68 Conn. L. Rptr. 314, and *Red Law Firm, LLC* v. *Webster Bank*, supra, 57 Conn. L. Rptr. 640, for the proposition that "[n]oncustomers may bring claims against a bank, including negligence, for a bank's conduct in noncompliance with statutes, regulations and

---

[13] "The court reached this conclusion after a thorough analysis of the four public policy factors relevant to imposing a duty." See footnote 15 of this opinion.

laws resulting in harm to the noncustomer." Specifically, the plaintiff contends that "*Sheiman* provides for private causes of action against a bank by a noncustomer when it is reasonably foreseeable that the rightful owners of moneys would suffer harm and loss by virtue of movement of moneys into accounts with different names and to improper recipients, thus causing harm and damage to the rightful owners of the moneys."

The following legal principles are relevant to our resolution of the plaintiff's claim. "To sustain a cause of action [in negligence], the court must determine whether the defendant owed a duty to the [plaintiff] . . . and the applicable standard of care. . . . The existence of a duty is a question of law. . . . Only if such duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . .

"The requisite duty to use care may stem from a contract, from a statute, or from circumstances under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result. . . . Negligence cannot be predicated upon the failure to perform an act which the actor was under no duty obligation to perform." (Citations omitted; internal quotation marks omitted.) *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 44–45.

In *Sheiman*, the plaintiffs were the granddaughters and heirs of a decedent whose estate issued a check to a trustee clients' fund at the defendant bank, Lafayette Bank and Trust Company (Lafayette). Id., 40. Thereafter, one of the daughters of the decedent presented an unendorsed check to the defendant bank, First Federal Savings and Loan Association (First Federal), and used the proceeds of the check to purchase certificates of deposit from First Federal. Id., 40–41. The plaintiffs, noncustomers of First Federal, subsequently brought

causes of action for violations of General Statutes (Rev. to 1979) § 42a-4-103,[14] and for negligent, reckless, and wanton acts against Lafayette and First Federal for its handling and processing of the check. Id., 41–42. First Federal filed a motion to strike the plaintiffs' complaint in its entirety on the ground that it failed to state a claim upon which relief could be granted, and the trial court granted First Federal's motion. Id., 42. On appeal, this court affirmed the trial court's decision and held that, "[b]ecause the plaintiffs have not alleged that any relationship contemplated by [General Statutes (Rev. to 1979)] § 42a-4-103 existed between themselves and First Federal, we conclude that the trial court was correct in finding that [the plaintiffs] had no rights in the instrument and no standing to sue thereon." Id., 44. Regarding the plaintiff's tort claims, the court concluded that "the plaintiffs have failed to allege any contract, statute or circumstances which would give rise to a duty owed by First Federal which would support an action in negligence"; id., 45; and that "the plaintiffs have failed to allege any facts from which . . . a duty may be proven." Id., 46.

In *Red Law Firm, LLC*, a defendant bank was presented with a check bearing the name of the plaintiff, who was a customer of the bank, containing forged and unauthorized endorsements, and the individual presenting the check was an improper payee not entitled to enforce the check or receive payment. *Red Law Firm, LLC* v. *Webster Bank*, supra, 57 Conn. L. Rptr. 641. The bank, however, negotiated the check and wrongfully paid the proceeds to the improper payee. Id. The trial court held that the bank did owe the plaintiff a duty of

---

[14] "General Statutes [(Rev. to 1979)] § 42a-4-103 (5) provides a rule for determining damages for the failure to exercise ordinary care. The damages rule of that subsection does not become operative, however, until the liability of the bank and some loss to the *customer* or *owner* [has been] established." (Emphasis in original; internal quotation marks omitted.) *Sheiman* v. *Lafayette Bank & Trust Co.*, supra, 4 Conn. App. 43.

care based upon the four public policy factors in *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 118, 869 A.2d 179 (2005).[15] *Red Law Firm, LLC* v. *Webster Bank*, supra, 643–44. Specifically, the court reasoned that, "[o]n balance, the four public policy factors . . . support imposing a duty on a bank to take reasonable steps to determine that an instrument presented for payment is endorsed and that the individual presenting it is the named payee." Id., 643.

In *East Shore Glass, Inc.*, a former employee of the plaintiff, who did not have authority to process, endorse, or deposit checks payable to the plaintiff, took possession of checks payable to the plaintiff and presented them to the defendant bank. *East Shore Glass, Inc.* v. *Bank of America, N.A.*, supra, 68 Conn. L. Rptr. 314. The former employee caused the checks to be forged or altered with an unauthorized endorsement, or with no endorsement thereon. Id. The defendant accepted the checks and wrongfully paid the former employee. Id. The plaintiff, a noncustomer of the defendant, brought causes of action against the defendant sounding in, inter alia, statutory violations and common-law negligence. Id. The trial court held that the defendant did owe the plaintiff a duty of care based upon public policy. Id., 319. The court reasoned that it was foreseeable that "[reasonable] bank agents should anticipate that they may improperly disburse funds to unauthorized individuals if they fail to take *basic steps* to identify persons presenting negotiable instruments for payment." (Emphasis added; internal quotation marks omitted.) Id., 318.

---

[15] "[I]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging the participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 118.

In the present case, the plaintiff's reliance on *Shei-man* is misplaced as its third amended complaint does not allege any circumstance that would give rise to a duty owed by the defendant. The plaintiff is a noncustomer of the defendant, and therefore, a duty of care could only be imposed upon the defendant, under *Shei-man*, if it was foreseeable that harm of the general nature of that suffered was likely to result from the challenged conduct. In opening the NV account, the defendant relied on the following documentation: a Certification of Owners of Legal Entities form, dated December 31, 2018, and signed by one of NV's principals; a Secretary of the State business inquiry regarding NV, dated December 31, 2018, indicating the last annual report filed for the year 2016; a Secretary of the State Annual Report of NV for the year 2016; "Newbury Village, LLC" Articles of Incorporation, dated December 13, 2002, a distinct entity from NV which is properly spelled "Newberry Village, LLC"; a Limited Liability Company Authorization Resolution form dated December 31, 2018, listing the tax identification number of NV, and signed by one of the principals of NV; and an Account Agreement form, dated December 31, 2018, and signed by a principal of NV. The issues identified by the plaintiff regarding NV's documentation, which was used by the defendant to open the NV account, do not demonstrate that a reasonable person would anticipate that a third-party noncustomer of the defendant would likely suffer harm from the opening of the NV account. As the trial court accurately observed, "the plaintiff . . . merely assumes foreseeability under these circumstances and advances no argument as to why this must be so."

Moreover, our Superior Court's decisions in *East Shore Glass*, *Inc.*, and *Red Law Firm*, *LLC*, are factually distinguishable from the circumstances of the present case. Both decisions involved a bank failing to take

basic steps to identify the persons presenting negotiable instruments for payment, which the courts held created a circumstance where the harm suffered by those plaintiffs was foreseeable. The circumstances of the present case do not involve negotiable instruments, nor do they involve the defendant failing to take basic steps to identify the depositor of moneys to the defendant. Rather, the facts alleged in the plaintiff's third amended complaint indicate that the defendant did take reasonable steps to identify the company opening the NV account. Thus, unlike in *East Shore Glass, Inc.*, and *Red Law Firm, LLC*, it was not foreseeable that a third-party noncustomer of the defendant would suffer harm by the defendant opening the NV account. Accordingly, we conclude that the court properly determined that the defendant did not owe the plaintiff a legal duty of care under the circumstances of this case.

III

The plaintiff next claims that the court erred in concluding that the allegations in its third amended complaint of banking statutes and regulations the defendant violated regarding the requirements prior to opening an account are not allegations of conduct offensive to public policy under CUTPA, and that § 35-1 is inapplicable to the plaintiff's claims. The plaintiff further argues that the court erred in its application and effect of our Supreme Court's decision in *Ulbrich* v. *Groth*, 310 Conn. 375, 78 A.3d 76 (2013). We disagree.

The following additional procedural history and legal principles are relevant to our resolution of the plaintiff's claim. In its July 8, 2022 memorandum of decision, the court determined that "[t]he defendant['s] . . . fourth count, which sets forth a claim of [a] violation of CUTPA, is legally insufficient because the plaintiff has not alleged facts sufficient to show 'immoral, unethical,

oppressive or unscrupulous' practices on the part of the defendant. . . .

"In the plaintiff's estimation, the statutes it alleges were violated by the defendant were designed to prevent unfair and/or deceptive business practices. This is a mere conclusion of law. The plaintiff reminds the court that these statutes include: the USA Patriot Act of 2001, 107 Pub. L. No. 56, 115 Stat. 272; 31 C.F.R. § 1020.220; § 36a-606a; the Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5311 et seq. (Bank Secrecy Act); the implementing regulations of the Bank Secrecy Act, 12 C.F.R. §§ 21.11 and 21.21; § 36a-287; 18 U.S.C. § 1956; 18 U.S.C. § 1957; § 53-275 et seq.; § 35-1; 18 U.S.C. § 1342; 18 U.S.C. § 1341; 18 U.S.C. § 1343; § 52-484; and § 42a-3-420. . . . These statutes, the plaintiff observes—with no specific analysis—require that 'prior to opening a bank account, a bank is required by law to identify and verify the company opening the account, identify and verify the depositors, identify deposits, and undertake activities prior to opening the account, including specific procedures and processes that banks must follow' and that the statutes and regulations are designed to prevent the diversion, hiding and concealment of moneys from their rightful owners. The plaintiff, however, invests no effort in describing how the facts it sets forth in its complaint constitute specific violations of any of the statutes it relies on.

"Indeed, the facts, and legal conclusions, alleged in the [third amended] complaint do not reveal either a complete lack of any activity to identify the corporate status of NV or that any further effort on the part of the defendant would have yielded the conclusion that NV had no legal existence." (Citation omitted.) The court further articulated that "nowhere in the complaint, and with few exceptions in its objection to the motion to strike, does the plaintiff specify how the

documentation obtained insufficiently complied with any of the identified statutes.

"The plaintiff's reliance upon those statutes or regulations it did attempt to demonstrate the [defendant] violated is misplaced. The plaintiff's objection refers the court to 31 C.F.R. § 1020.220 (a) (2) (ii) (A) (2), which the brief represents provides that a bank must possess a certified copy of the articles of incorporation or other certified corporate document . . . . The regulation, which is part of a chapter entitled Financial Crimes Enforcement Network, however, provides that it is applicable to a bank required to have an anti money laundering compliance program under the regulations implementing 31 U.S.C. § 5318 (h), 12 U.S.C. § 1818 (s), or 12 U.S.C. § 1786 (q) (1) . . . . 31 C.F.R. § 1020.220 (a) (1). The plaintiff does not, either in its complaint or its objection, demonstrate that the defendant is subject to the requirements set forth in the regulation. . . .

"Moreover, the regulation established the requirement for risk based procedures for verifying the identity of each customer to the extent reasonable and practicable. The procedures must enable the bank [to] form *a reasonable belief* that it knows the true identity of each customer. These procedures must be based on the bank's assessment of the relevant risks, including . . . the various methods of opening accounts provided by the bank, the various types of identifying information available, and the bank's size, location, and customer base. [(Emphasis added.)] 31 C.F.R. § 1020.220 (a) (2). The plaintiff nowhere addresses the reasonable belief standard imposed by the regulation and the court declines to do so for it. While the regulation does require minimum elements for the *procedures* it is required to implement, the plaintiff omits the language of the regulation that describes verification through documents that provides that [f]or a bank relying on documents, the [customer identification program] must contain procedures that set forth the documents that the

bank will use. These documents *may* include . . . (2) For a person other than an individual (such as a corporation, partnership, or trust), documents showing the existence of the entity, *such as* certified articles of incorporation, a government issued business license, a partnership agreement, or trust instrument. . . . [(Emphasis added.)] Far from imposing a list of mandatory documents, which the defendant is alleged not to have obtained, required for opening an account, the regulation *suggests* the type of documentation necessary for a *mandated* bank to implement the required procedures to acquire a *reasonable belief* relative to the identity of each customer. The defendant, as the plaintiff alleges, did obtain documentation from NV at the time of the opening of the account. The plaintiff's failure to address the reasonable belief standard would require the court to conduct the analysis for it. This the court declines to do." (Citations omitted; emphasis in original; internal quotation marks omitted.)

As to the plaintiff's contention that the defendant violated § 35-1, the court stated that "[t]he plaintiff asserts in its brief that the defendant opened an account under an illegitimate name and accordingly violated . . . § 35-1, again without explaining how its account opening procedures manifested a violation. This statute provides that '(a) [n]o person, except as provided in this subsection, shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business' in the absence of enumerated requirements. General Statutes § 35-1. The plaintiff misapprehends the application of this statute which by its explicit language does not apply to the defendant, which did not conduct business under an illegitimate name. Rather, it was NV that the plaintiff

alleges was the malefactor. Thus, this statute is inapplicable.

"Returning to the criteria considered for a violation of CUTPA, the plaintiff, relying on the violation of the statute, has failed to establish, or provide any analysis, of the first criterion relative to how the defendant's opening procedures offends public policy as established by statute, the common law or otherwise. At best, the plaintiff describes a mere technical violation of any statute insufficient, without more, to demonstrate that the conduct offends public policy, implicates the concept of unfairness, or causes the type of substantial injury that CUTPA was designed to address. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 524–25, 646 A.3d 1289 (1994) (technical violation of banking statute absent allegations of other impropriety did not violate CUPTA).

"There is nothing in the plaintiff's complaint that suggests an 'immoral, unethical, oppressive, or unscrupulous' character of the defendant's opening procedure as required to satisfy the second criterion. The plaintiff did not argue in its briefing or at oral argument that the [defendant's] opening procedures alleged in its [third amended] complaint caused substantial injury to consumers, competitors or other businesspersons, so the court does not consider the third criterion. For the foregoing reason the court strikes the fourth count of the plaintiff's [third amended] complaint for its failure to state a legally sufficient cause of action."

"The basic contours of a CUTPA claim are well settled. CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . To give effect to its provisions, [General Statutes] § 42-110g (a) of [CUTPA] establishes a private cause of action, available to [a]ny

person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes §] 42-110b . . . . When interpreting CUTPA, § 42-110b (b) directs us to consider the interpretations given by the Federal Trade Commission and the federal courts to the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1), as from time to time amended.

"To successfully state a claim for a CUTPA violation, the plaintiffs must allege that the defendant's acts occurred in the conduct of trade or commerce. . . . On the record before us, this requirement undoubtedly has been met. It is well settled that CUTPA applies to banks and banking activities. . . .

"The plaintiffs also must establish that the alleged acts or practices are unfair or deceptive. [W]e have adopted [certain] criteria set out in the cigarette rule by the [F]ederal [T]rade [C]omission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some [common-law], statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . .

"We are mindful that our legislature deliberately chose not to define the scope of unfair or deceptive

acts proscribed by CUTPA so that courts might develop a body of law responsive to the marketplace practices that actually generate such complaints. . . . Predictably, [therefore] CUTPA has come to embrace a much broader range of business conduct than does the [common-law] tort action. . . . Moreover, [b]ecause CUTPA is a self-avowed remedial measure . . . § 42-110b (d), it is construed liberally in an effort to effectuate its public policy goals. . . . Indeed, there is no . . . unfair method of competition, or unfair [or] deceptive act or practice that cannot be reached [under CUTPA]. . . . Thus, it has been held that a violation of CUTPA does not necessarily have to be based on an underlying actionable wrong . . . . Nonetheless, [u]nder CUTPA, only intentional, reckless, unethical or unscrupulous conduct can form the basis for a claim." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Cenatiempo* v. *Bank of America, N.A.*, 333 Conn. 769, 788–91, 219 A.3d 767 (2019).

In its amended appeal, the plaintiff argues that the defendant's noncompliance with the banking statutes and regulations cited in its third amended complaint violates public policy, and such noncompliance is immoral, unethical, and unscrupulous. The plaintiff further argues, in the alternative, that its third amended complaint alleges a violation of § 35-1, which constitutes a per se violation of CUTPA.

As the court aptly observed, however, the plaintiff's third amended complaint does not specify how the documentation obtained by the defendant insufficiently complied with any of the identified statutes or regulations. To the extent that the plaintiff argues that the defendant's failure to obtain a current certified copy of the articles of incorporation or other current certified corporate document violated 31 C.F.R. § 1020.220 (a)

(2) (ii) (A) (2),[16] such argument is legally flawed. As articulated by the court, the plaintiff's third amended complaint does not demonstrate how the defendant is subject to the regulation.

Even if we were to assume that the defendant's account opening procedures fall within the ambit of the regulation, the circumstances alleged by the plaintiff do not establish a violation of the regulation. Specifically, 31 C.F.R. § 1020.220 (a) (2) states that a bank's procedures must enable the bank to form a reasonable belief that it knows the true identity of each customer and sets forth examples of documents that a bank may use to verify the identity of its customer. Contrary to the plaintiff's contention, the regulation does not mandate that the defendant must possess a current certified copy of the articles of incorporation or other current certified corporate document. Rather, the regulation suggests the type of documents a bank may require under its opening procedures to form a reasonable belief as to the identity of its customers. In the present case, the defendant did obtain documentation from NV

---

[16] Title 31 of the Code of Federal Regulations, § 1020.220, provides in relevant part: "(a) Customer Identification Program: minimum requirements—(1) In general. A bank required to have an anti-money laundering compliance program under the regulations . . . must implement a written Customer Identification Program (CIP) appropriate for the bank's size and type of business that, at a minimum, includes each of the requirements of paragraphs (a) (1) through (5) of this section. . . . (2) Identity verification procedures. The CIP must include risk-based procedures for verifying the identity of each customer to the extent reasonable and practicable. The procedures must enable the bank to form a reasonable belief that it knows the true identity of each customer. . . . At a minimum, these procedures must contain the elements described in this paragraph (a) (2). . . . (ii) Customer verification. . . . (A) Verification through documents. For a bank relying on documents, the CIP must contain procedures that set forth the documents that the bank will use. These documents *may* include . . . (2) For a person other than an individual . . . documents showing the existence of the entity, *such as* certified articles of incorporation, a government-issued business license, a partnership agreement, or trust instrument. . . ." (Emphasis added.)

to verify the identity of its customer at the time it opened the NV account. As the court explained, "the facts, and legal conclusions, alleged in the [third amended] complaint do not reveal . . . that any further effort on the part of the defendant would have yielded the conclusion that NV had no legal existence." Therefore, the plaintiff's third amended complaint fails to establish how the defendant's account opening procedures prevented the defendant from forming a reasonable belief as to the identity of NV in violation of 31 C.F.R. § 1020.220.

The plaintiff also asserts that the defendant's conduct in opening the NV account violated § 35-1 and constitutes a per se violation of CUTPA. Section 35-1 (a) provides in relevant part: "No person, except as provided in this subsection, shall conduct or transact business in this state, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business . . . ." As the trial court accurately reasoned in its memorandum of decision, "[t]he plaintiff misapprehends the application of this statute which by its explicit language does not apply to the defendant, which did not conduct business under an illegitimate name. Rather, it was NV that the plaintiff alleges was the malefactor. Thus, this statute is inapplicable." We agree with the court that § 35-1 does not apply to the defendant in the present case, as the defendant did not conduct or transact business under an improper name; rather it was NV whom the plaintiff alleges conducted business under a fictitious name.

The plaintiff further argues that the court erred in not considering our Supreme Court's decision in *Ulbrich* v. *Groth*, supra, 310 Conn. 375. Specifically, the plaintiff asserts that *Ulbrich* "confirms that CUTPA claims are available to noncustomers as well as customers of a

bank . . . .'' The court, however, did not strike the plaintiff's CUTPA claim on the basis that it was a non-customer of the defendant. Instead, the court struck the plaintiff's CUTPA claim because the circumstances alleged by the plaintiff in its third amended complaint failed to establish how the defendant's opening procedures offended public policy or were immoral, unethical, oppressive, or unscrupulous. Therefore, the plaintiff's reliance on *Ulbrich* is misplaced.

Accordingly, we conclude that the court properly struck the plaintiff's fourth count alleging a CUTPA violation.

## IV

The plaintiff's final claim is that the trial court erred in "failing to address that at least as of April, 2019, the date of service of the instant lawsuit, the defendant was on notice that the account had been opened under an improper and fictitious name and that the moneys in this account were owned by another party."[17] Specifically, the plaintiff argues that, "[o]nce a bank becomes aware of issues with an existing account, the statutes require the bank to investigate the account. Thus, failure to comply with the statutes is contrary to public policy." In support of its argument, the plaintiff cites to 31 C.F.R. § 1020.220 (a) (2) (iii) (C) for the proposition that, as of April, 2019, the defendant had a duty "to reinvestigate [the NV account] at that time, to verify and identify the name on the account which the defendant failed to do." In particular, the plaintiff contends that "as required by the statutes and regulations, including 31 C.F.R. § 1020.220 (a) (2) (ii) (B) (1), the defendant would have been required to check public databases and did not." We disagree.

---

[17] The plaintiff's third amended complaint is devoid of any allegation that additional banking transactions occurred after April, 2019, regarding the NV account.

Entitled "Customer identification program requirements for banks," 31 C.F.R. § 1020.220, provides in relevant part: "(a) (2) (iii) Lack of verification. The [customer identification program] must include procedures for responding to circumstances in which the bank cannot form a reasonable belief that it knows the true identity of a customer. These procedures should describe . . . (C) When the bank should close an account, after attempts to verify a customer's identity have failed . . . ." 31 C.F.R. § 1020.220 (a) (2) (iii). Section 1020.220 further provides in relevant part: "Verification through *non-documentary* methods. For a bank relying on non-documentary methods, the [customer identification program] must contain procedures that describe the non-documentary methods the bank will use. (1) These methods may include contacting a customer; independently verifying the customer's identity through the comparison of information provided by the customer with information obtained from a consumer reporting agency, public database, or other source; checking references with other financial institutions; and obtaining a financial statement. . . ." (Emphasis added.) 31 C.F.R. § 1020.220 (a) (2) (ii) (B).

As we articulated in part III of this opinion, in its third amended complaint, the plaintiff did not allege facts demonstrating that the defendant's operating procedures were subject to 31 C.F.R. § 1020.220. Even if we were to assume the regulation applies to the defendant, 31 C.F.R. § 1020.220 (a) (2) (ii) (B) is not applicable to the circumstances of this case, as it only applies to a bank's opening procedures when verifying its customer's identity through nondocumentary methods. In the present case, the defendant relied on documents from NV to open the NV account. Moreover, 31 C.F.R. § 1020.220 (a) (2) (iii) requires only that a bank have procedures in place for when a bank cannot form a reasonable belief as to the identity of its customer. The

plaintiff's third amended complaint does not establish how the defendant's opening procedures prevented the defendant from forming a reasonable belief as to the identity of NV based upon the documents it received in connection with the opening of the NV account. As reasoned in Judge Schuman's order striking the plaintiff's second amended complaint, "[c]ontrary to the plaintiff's suggestion, the [defendant] has no duty to research pending lawsuits against a prospective customer and determine, without any court proceedings, that the customer owes money to a third party such as the plaintiff." The plaintiffs do not cite any applicable legal authority, nor are we aware of any, that would impose a duty on the behalf of the defendant to reinvestigate the identity of NV upon being served with a complaint alleging the moneys in the NV account belonged to a noncustomer of the defendant. Therefore, we conclude that the court properly disregarded the plaintiff's contention that the defendant had a duty, as of April, 2019, to investigate the NV account.

For the foregoing reasons, we conclude that the plaintiff has failed to demonstrate that the court erred in granting the defendant's motion to strike its third amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.